UNITED STATES of America,
Appellee,

v.

Robert I. TOUSSIE, Appellant.

No. 518, Docket 33106.

United States Court of Appeals
Second Circuit.

Argued April 17, 1969.

Decided May 14, 1969.

Henry G. Singer, Brooklyn, N. Y. (Jacob W. Heller, New York City, on the brief), for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Vincent T. McCarthy, U. S. Atty. for the Eastern District of New York, on the brief), for appellee.

Before WATERMAN, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

After a jury trial before Jacob Mishler, J., in the United States District Court for the Eastern District of New York, appellant Robert I. Toussie was convicted of having failed to register for the draft in violation of 50 U.S.C. App. § 462(a). Appellant was sentenced under 18 U.S.C. § 4208(b), which commits him to the custody of the Attorney General for study and report, but sentence was stayed and appellant released on his own recognizance pending appeal. Although appellant raises a number of substantial questions, we conclude that his conviction should be affirmed.

Appellant never registered for selective service from June 23, 1959, when he became 18, to the time of his arrest and indictment in 1967. He claims that his sincerely held conscientious beliefs against war prevented him from doing so, that his prosecution was barred by the general five-year statute of limitations, 18 U.S.C. § 3282, that his conviction violated his fifth amendment right against self-incrimination, that there was insufficient proof of his mental capacity, and that there were errors in the charge of the trial judge. We turn first to the claim based on the statute of limitations.

I.

The command of 18 U.S.C. § 3282 is that:

Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is

instituted within five years next after such offense shall have been committed.

Appellant's claim is that his offense, if any, was committed in June 1959 on his 18th birthday or a few days thereafter so that his indictment in 1967, almost eight years later, was barred by the statute. The Government replies that the offense of failing to register is a continuing one; hence the prosecution was timely. This position is based upon a regulation issued by the President, 32 C.F.R. § 1611.7(c), which states:

The duty of every person subject to registration to present himself for and submit to registration *shall continue at all times*, and if for any reason any such person is not registered on the day or one of the days fixed for his registration, he shall immediately present himself for and submit to registration before the local board in the area where he happens to be. [Emphasis added.]

See also 32 C.F.R. § 1642.2. Appellant rejoins that the regulation cannot change a single statutory offense to a continuing crime. The issue was raised in the trial court before John F. Dooling, Jr., J., on a motion to dismiss the indictment, and Judge Dooling rejected appellant's contention. 280 F.Supp. 473 (E.D.N.Y.1967).

Surprisingly, the issue has not been litigated frequently, although the few decisions favor the Government. In Fogel v. United States, 162 F.2d 54 (5th Cir.), cert. denied, 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 373 (1947), the continuing crime theory was applied to failure to register for the draft. Although the decision has been criticized,[1] the only other court of appeals that has considered the question has reached the same result, expressly citing *Fogel* with approval. McGregor v. United States, 206 F.2d 583 (4th Cir. 1953); cf. Gara v. United

---

1. See Note, The Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution, 102 U.Pa.L.Rev. 630, 644–645 (1954); Stan.Intra.L.Rev. 39 (1948).

See also Model Penal Code §§ 107(4), 108 (1) (e), Comments (Tent.Draft No. 5, 1956).

States, 178 F.2d 38, 40 (6th Cir. 1949), aff'd on another point by an equally divided court, 340 U.S. 857, 71 S.Ct. 87, 95 L.Ed. 628 (1950). In addition, this court used a continuing duty theory in affirming a conviction for the analogous crime of failing to advise the local draft board of a change of address, United States v. Guertler, 147 F.2d 796 (2d Cir. 1945). The only apparent contrary authority is a district court decision in United States v. Salberg, 287 F. 208 (N.D. Ohio 1923), involving World War I registration, but it is unclear whether any regulation then clearly made the duty to register a continuing one.

■■ The tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term. On the other hand, we are faced with a regulation that clearly establishes a continuing duty and that has long been construed as creating a continuing offense. Appellant argues that the regulation is unconstitutional or unauthorized, but we do not think that is so. The statutory duty to register is set forth in 50 U.S. C. App. § 453 as follows:

> Except as otherwise provided in this title * * *, it shall be the duty of every male citizen of the United States * * * who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.

The regulation here involved was promulgated by the President through an Executive Order and does deal with the days and times for registration. Moreover, the President is authorized by 50 U.S.C.App. § 460 to prescribe rules and regulations necessary for the operation of the selective service system. We could not fairly say that the regulation is outside the congressional grant of power unless it were construed to create an unending duty because of the phrase "shall continue at all times." That is the meaning appellant ascribes to it, envisioning a prosecution at age 70 for failure to register 52 years before at age 18. This contention is understandable in view of the simultaneous indictment of appellant's brother Samuel, who was then almost 33.[2] Were that reading of the regulation correct, we agree that the result would be unfair and absurd. But Judge Dooling found that construction unwarranted and construed the continuing duty to end at age 26, a ruling with which we agree. The power to compel registration flows from the statute which, by its terms, applies only to males between the ages of 18 and 26; the regulation can do no more and should not be construed to attempt to do so. Cf. 32 C.F.R. § 1642.12.

Appellant also argues that the general five-year statute of limitations must apply "Except as otherwise expressly provided by law," and that Congress has made no such plain exception for the crime charged here. It might be enough to point out in response that the five-year statute is being applied; the issue is when it starts to run. But, more fundamentally, even if construed as an extension or a tolling of the statute of limitations to five years after age 26, the continuing duty regulation is an express provision of "law."

We are aware of other problems lurking in the background, some of which appellant has called to our attention.

2. Judge Dooling held that the 5-year statute of limitations in 18 U.S.C. § 3282 had run as to Samuel and dismissed the indictment. But see McGregor v. United States, 206 F.2d 583 (4th Cir. 1953) (indictment at age 30 when predecessor to 18 U.S.C. § 3282 was a 3-year statute of limitations); cf. Fogel v. United States, 162 F.2d 54 (5th Cir.), cert. denied, 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 373 (1947), motion for new trial denied, 167 F.2d 763 (5th Cir.), rev'd, 335 U.S. 865, 69 S.Ct. 136, 93 L.Ed. 411 (1948) (per curiam).

For example, is each day of failure to register a separate offense, for which a prosecution can be brought? Cf. Gara v. United States, *supra*. Can the knowing and wilful failure to register when the duty first attaches be legally cured by a subsequent tardy registration? The Government, in its brief, flatly answered the first question no; an affirmative answer to the second would be questionable at best. However, since the indictment here charged only one offense—wilful failure to register over a lengthy period of time—and appellant never did register, neither issue is squarely raised, except in connection with the fifth amendment argument discussed below. Moreover, are there other continuing duties under the selective service system that are not cut off at age 26, and if so, when, if ever, does the statute of limitations run as to them? It may be that application of the statute of limitations to this area deserves particularized congressional attention, with a statute, rather than regulations, stating the applicable limitation periods. But the only question before us on this phase of the case is whether the five-year statute of limitations had run on appellant's offense of failing to register up to age 26. We conclude that on this record that defense was properly rejected by Judge Dooling.

## II.

■ Appellant's second claim is that if the statute of limitations did not bar prosecution more than five years after his initial failure to register then the fifth amendment does. The claim is a novel one in the draft registration area, although in United States v. Olson, 253 F. 233 (W.D.Wash.1917), a different type of self-incrimination claim involving World War I registration was made and rejected. See generally Mansfield, The Albertson Case: Conflict Between the Privilege Against Self-Incrimination and the Government's Need for Information, 1966 Sup.Ct.Rev. 103, 125–58. However, appellant draws heavily on recent decisions of the Supreme Court, reversing convictions for failure to comply with other registration statutes on the ground that compliance would have required the registrant to incriminate himself. See Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965) (failure to register as member of the Communist Party); Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed. 2d 889 (1968) (failure to register as gambler); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) (failure to pay gambling tax); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (possession of unregistered firearm). Appellant's attack is focused solely on the continuing duty regulation. That regulation, it is argued, could not legally be applied to appellant because compliance would have compelled him to disclose his birth date and age, thereby admitting criminal culpability for his prior failure to register. Cf. United States v. Rosenson, 291 F.Supp. 874 (E.D.La.1968).

This argument immediately brings to mind several considerations, some suggested by the Government. Thus, there is no claim that, as in the cited cases, the initial requirement of registration for selective service runs afoul of the self-incrimination privilege. The government interest being furthered—the raising of an army—is most significant, and self-registration is probably necessary to enforce the statutory scheme. The purpose of registration is not to detect and prosecute a certain type of criminal, e. g., gamblers, but to select those available and qualified for military service. While it is arguable that the continuing duty regulation is directed at a "selective group inherently suspect of criminal activities," Albertson v. Subversive Activities Control Board, *supra*, 382 U.S. at 79, 86 S.Ct. at 199, many initial failures to register may be due to such innocent reasons as illness, ignorance, or inability to get to a local board. Moreover, the regulations indicate that the aim is to get qualified registrants—even delinquent ones—into the armed forces

rather than into jail.[3] Cf. United States v. Minor, 398 F.2d 511 (2d Cir. 1968). In addition, it may be possible for a young man to register late without giving the incriminatory information, cf. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), but it must be conceded that doing so might well focus unwanted attention on him. Moreover, since appellant chose not to register at all, the Government contends that he has no valid claim. Finally, this might well be the type of case in which the privilege would be sufficiently protected by barring any possibly incriminating information in any subsequent prosecution; Judge Dooling in substance accepted this reasoning, but that was before the Supreme Court decisions cited above.

Although some of these considerations are substantial, we conclude that there is a more fundamental reason for rejecting appellant's fifth amendment analysis. A registration statute may create the dilemma whether to incriminate oneself or risk punishment for failure to do so: e. g., whether to register as a communist or a gambler or owner of a firearm or risk prosecution for failing to register as in *Albertson, Marchetti* or *Haynes*.[4] In these situations, the Supreme Court has applied the privilege to eliminate that problem. But that is not the case here. Assuming for discussion only that Toussie might have incriminated himself by registering, let us say, four years late, we think that he did not risk prosecution by failing to do so, at least not in the sense relevant here. That is, his inaction did not give rise to the threat of punishment beyond that he had already risked. The Government

has conceded that only one offense is committed by failing to register between the ages of 18 and 26, and its actions have been consistent with its words. Appellant was indicted for and convicted of only one offense—failing to register on his 18th birthday or at any time. By doing nothing—as indeed was his course —Toussie was not being put to a cruel choice that the privilege is designed to avoid. It is true that because of appellant's inaction from age 18 to age 26, the statute of limitations did not start to run, so that the risk of prosecution was in that sense at least not being diminished. That element of the risk, however, attaches to merely continuing to exist at all, having once committed the crime. Certainly, it would be preferable for one in Toussie's position to shorten a limitation period or to insure the beginning of its lapse. But we do not regard the inability to do so without danger of detection as violating his privilege against self-incrimination. Similarly, leaving the jurisdiction may be a ground for tolling of the statute of limitations, cf. 18 U.S.C. § 3290, but we would not regard that as an improper infringement on the right to travel. While the concept of compulsion as used in the fifth amendment context has been liberally construed by the Supreme Court,[5] the unpleasant consequence here of doing nothing is not sufficient to fit properly within that term, cf. Friendly, The Fifth Amendment Tomorrow: The Case for Constitutional Change, 37 U.Cin.L.Rev. 671, 675 n. 25, 700 (1968), particularly in view of the importance of the government interest involved. In short, we hold that the fifth amendment did not bar prosecution here.

---

3. The regulations provide for referral to a United States Attorney only after the local board fails to convince the registrant to perform his duties. See, e. g., 32 C.F.R. § 1613.16. In other situations a board would presumably rely on the delinquency regulations. See 32 C.F.R. §§ 1642.1–.46. But cf. Kaohelaulii v. United States, 389 F.2d 495 (9th Cir. 1968).

4. Mr. Justice Goldberg referred to the possibility of giving perjured answers, thus

converting the "dilemma" into a "trilemma." See Murphy v. Waterfront Comm., 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

5. See, e. g., Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

## III.

Appellant's remaining arguments do not require extensive comment. The claim is made that failure to register for reasons of conscience is protected by the first amendment. However, appellant apparently recognizes that the authorities are against him, asking for "a new look by the Federal Courts." Certainly, various courts of appeals have rejected the contention. See, e. g., United States v. Kime, 188 F.2d 677 (7th Cir.), cert. denied, 342 U.S. 823, 72 S.Ct. 41, 96 L.Ed. 622 (1951); Michener v. United States, 184 F.2d 712 (10th Cir. 1950); Richter v. United States, 181 F. 2d 591 (9th Cir.), cert. denied, 340 U.S. 892, 71 S.Ct. 199, 95 L.Ed. 647 (1950); Gara v. United States, *supra.* And in United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417 (1953), the Supreme Court emphasized the constitutionality of the statutory treatment afforded conscientious objectors, which required registration, then investigation of the sincerity of alleged religious beliefs and, finally, assignment to non-military alternative service. The Government's ability to carry out this statutory scheme for conscientious objectors clearly depends in large measure on identification of those holding such beliefs. It is true that in theory the sincerity of one who claims that his conscientious beliefs prevented him even from registering could be tested by the trier of fact in a criminal trial, the procedure appellant sought here, but the present procedures of administrative decision and judicial review do not constitute an infringement of the first amendment. While a proper test of a civilized society is the solicitude with which it treats its principled dissenters, under present doctrine requiring them to register for eventual assignment to non-military alternative service is constitutional.

Appellant's final claims are insubstantial. There was ample evidence before the jury to warrant a finding that he had the requisite mental capacity, despite a history of emotional disturbance. Moreover, the trial court properly charged the jury on this issue under the test of United States v. Freeman, 357 F.2d 606 (2d Cir. 1966), and committed no error in its charge or rulings on defendant's requests to charge.

Judgment affirmed.