**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Quinton OWENS, Defendant-Appellant.**

No. 28509.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1970.

James W. Matthews, Miami, Fla., (Court Appointed) for defendant-appellant; Robert Quinton Owens, pro se.

Robert W. Rust, U. S. Atty., Jose E. Martinez, Neal R. Sonnett, U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Robert Q. Owens was convicted by a jury of wilfully and knowingly failing to register with the Selective Service. He does not dispute that the evidence was sufficient to support a conviction for the crime charged in the indictment but contends that the indictment failed to state a criminal offense. Finding against him on this and all other issues raised, we affirm the conviction.

Owens was required by law to register with the Selective Service within five days after his eighteenth birthday.[1] Since he became eighteen on February 19, 1968 he had until February 24, 1968 to register. The indictment charged that Owens knowingly and wilfully failed to register on or about April 16, 1969, approximately fourteen months after the date on which he could first have come into violation of the law.

Ordinarily a variance between the date specified in the indictment and the date of the commission of the crime will not be fatal to a conviction obtained thereunder.[2] Owens contends, however, that his case states an exception to that general rule, since the variation in dates may have substantially affected the out-

---

1. Selective Service Act of 1967, 50 U.S. C.A.App. § 453 (1968); Presidential Proclamation No. 2799, 13 F.R. 4173, 62 Stat. 1531, 50 U.S.C.A.App. at 17 (1948).

2. See, e. g., Russell v. United States, 429 F.2d 237 (5th Cir. 1970); United States v. Covington, 411 F.2d 1087 (4th Cir. 1969).

come to the trial. It is evident from the record that the indictment was so dated as a deliberate strategem by the Government to allow the admission of inculpatory statements made on that date revealing scienter. We have no need to decide this point, however, since we reject Owens' major contention—that the crime was completed five days after his eighteenth birthday and that an indictment charging that the criminal conduct occurred over a year later does not state a crime. To the contrary, we find that it does charge a crime on that date and therefore that there was no variance between the date of the crime and the date of the indictment.

The indictment stated a crime because on April 16, 1969 Owens had not complied with the Selective Service laws which imposed on him the *continuing duty* to register. Pursuant to statutory authority, the President issued 32 C.F.R. § 1611.7(c), which provides:

> "The duty of every person subject to registration to present himself for and submit to registration shall continue at all times, and if for any reason any such person is not registered on the day or one of the days fixed for his registration, he shall immediately present himself for and submit to registration before the local board in the area where he happens to be."

The validity of the "continuing duty" regulation has been consistently upheld by the courts which have considered it.[3] Owens argues that the recent decision of the Supreme Court in United States v. Toussie, supra, n. 3, which reversed the outcome of these cases, also struck a death blow to the continuing duty regulation. We do not agree. In *Toussie*, the Court was concerned with the application of the statute of limitations to the Selective Service registration provisions. In that case the Government argued that because of the continuing duty regulation the statute of limitations on all possible failures to register did not commence to run until after a date five days past the defendant's twenty-sixth birthday. The Court disagreed and held that the statute began to run on all possible violations five days after the defendant's eighteenth birthday. This was squarely based upon reasoning that the continuing duty regulation could not be construed to have the effect of varying the congressionally declared policy of barring any prosecution for this offense five years after it was first committed. The Court did not, as Owens suggests, outlaw the continuing duty regulation; rather, it explicitly excepted it from the sweep of the opinion. In footnote 17 the Court stated:

> "We do not hold, as the dissent seems to imply * * * that the continuing duty regulation is unauthorized by the Act. All we hold is that neither the regulation or the Act itself requires that failure to register be treated as the type of offense which effectively extends the statute of limitations. 397 U.S. at 121, n. 17, 90 S.Ct. at 864, n. 17, 25 L.Ed.2d at 165, n. 17."

The continued viability of the continuing duty regulation authorized the conviction on the indictment as it was drawn in Owens' case. Owens, however, raised the additional contention at oral argument that by registering with the Selective Service on June 19, 1969, more than a month after his arrest, he fulfilled his continuing duty. This contention is completely without merit. The purpose of the continuing duty regulation is to encourage registration by maintaining the duty to register over a long period of time. Under Owens' reading, no one would be compelled under penalty of law to register until he was indicted for failure to register. Moreover, the crime charged on the indict-

---

3. *See* United States v. Toussie, 410 F.2d 1156 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970); McGregor v. United States, 206 F.2d 583 (4th Cir. 1953); Fogel v. United States, 162 F.2d 54 (5th Cir.), cert. denied, 332 U.S. 791, 68 S.Ct. 99, 92 L.Ed. 373 (1947).

ment was complete on April 16, 1969. Subsequent registration does not relate back to set aside an offense which had already been committed. Cf. Marshall v. United States, 140 F.2d 261 (5th Cir. 1944).

Finding no merit in Owens' primary contention, we next pass to two claimed points of error which both arose from the same factual event. On April 16, 1969 a Special Agent of the Federal Bureau of Investigation confronted Owens, who was with a group of people on the street. The agent identified himself, stated that he was investigating a possible violation of the Selective Service laws, read *Miranda* warnings from a standard form to Owens and told him that he was not under arrest. Owens refused to acknowledge the form by signing it and stated that he did not want to talk with the agent. The agent asked him if he was eighteen years old which he admitted, and if he had any documents from the Selective Service in his possession, which he admitted he did not. Thereafter, Owens walked away from the agent, got in a car and drove off.

■■ Owens first contends that the trial judge erred in allowing the FBI agent to testify that he refused to sign a waiver of his rights. We note initially that this statement in the agent's answer was a spontaneous part of his response to a general question and was not objected to after it was given. Under Fed.R. Crim.P. 52(b), this was not plain error affecting substantial rights that we may notice on review. Moreover, Owens' claim of prejudice by this action is insubstantial. He claims that the answer brought before the jury his invocation of his privilege against self-incrimination. This claim is frivolous because instead of showing he claimed and relied upon the privilege, the full facts show he answered questions.

■■ Owens also contends that the trial court erred in allowing the admissions made by him subsequent to his expressed desire not to be questioned to go to the jury. This is also without merit. The contention draws its basis from the portion of the opinion of the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966), which stated: "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." The contention overlooks the fact that the *Miranda* decision was directed at in-custody, coercive interrogations. That is a far different situation from the street corner meeting present here, where Owens was not alone, was not in a coercive atmosphere, was not under arrest and was free to and actually did walk away when he chose. In these circumstances, *Miranda* did not require the agent to give Owens any warnings or advice at all. United States v. Prudden, 424 F.2d 1021 (5th Cir. 1970); compare Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). By gratuitously advising Owens of his rights, the agent in no way conferred additional rights on him. The statements that were made were voluntarily offered in response to proper questions in an atmosphere free from actual or implied coercion and were therefore properly admitted into evidence.

Affirmed.