UNITED STATES of America, Plaintiff,

v.

Russell James MARTIN, a/k/a Rusty Martin, Defendant.

No. CR 82–2005.

United States District Court,
N.D. Iowa, E.D.

Nov. 23, 1982.

Robert L. Teig, Asst. U.S. Atty., Cedar Rapids, Iowa, for plaintiff.

Mark Bennett, Don Nickerson, Des Moines, Iowa, for defendant.

## ORDER OF NOVEMBER 19, 1982
## AS AMENDED

McMANUS, Chief Judge.

On the court's own motion, for the convenience of the parties and simplification of the record,

It is

ORDERED

That this court's order of November 19, 1982 as amended by its Order Nunc Pro Tunc of November 22, 1982 shall constitute the order as amended and read as follows:

This matter is before the court on defendant's six resisted motions to dismiss, filed October 29, 1982. Order in accordance herewith.

On October 5, 1982, defendant was indicted by the Grand Jury for the Northern District of Iowa charging:

Beginning on or about July 27, 1980, and continuing until on or about August 20, 1982, within the Northern District of Iowa, RUSSELL JAMES MARTIN, a male person required to present himself for and submit to registration pursuant to the Military Selective Service Act, rules and regulations duly made pursuant thereto and Presidential Proclamation No. 4771 of July 2, 1980, did knowingly and wilfully fail, evade and refuse to present himself for and submit to registration in violation of 50 U.S.C.App. §§ 453 and 462(a).[1]

### I.

In his "Motion to Dismiss Indictment for Alleging a Crime Which Does Not Exist or in the Alternative to Strike Surplusage," defendant argues that the indictment is defective because it charges him with failing to fulfill his continuing duty to register, where no such duty or offense exists under the law. In the alternative he seeks to strike the continuing allegations as surplusage. The government's resistance maintains that failure to register is a continuing offense, i.e., one that continues to be committed each day that the defendant remains unregistered, but neither urges a variance nor resists the motion to strike.

An early history of the Military Selective Service Act and the draft laws is provided in *Toussie v. United States,* 397 U.S. 112, 116, 90 S.Ct. 858, 860–61, 25 L.Ed.2d 156 (1970). As can be gleaned from the discussion therein, originally, there was no continuing duty to register because the Selective Service Act of 1917 provided that failure to register at the designated time was a completed criminal offense. *See, United States v. Salberg,* 287 F. 208 (N.D.Ohio 1923). It wasn't until rules and regulations were promulgated under the Selective Service Act of 1940 that there arguably arose a continuing duty to register.[2] The regulation which created the continuing duty to register was

---

1. § 453. Registration
   . . . .
   (a) [I]t shall be the duty of every male citizen of the United States ... who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.
   § 462. Offenses and penalties
   (a) ... any other person charged as herein provided with the duty of carrying out any of the provisions of this title [sections 451 to 471a of this Appendix], or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty ... or who otherwise evades or refuses registration ... or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title [said sections], or rules, regulations, or directions made pursuant to this title [said sections] ... shall, upon conviction in any district court of

the United States of competent jurisdiction, be punished ...
   . . . .
   Pursuant to § 453 on July 2, 1980 President Carter issued Proclamation No. 4771 providing in part:
   . . . .
   1–1. *Persons to be Registered and Days of Registration.*
   1–101. Male citizens of the United States and other males residing in the United States, unless exempted by the Military Selective Service Act, as amended, who were born on or after January 1, 1960, and who have attained their eighteenth birthday, shall present themselves for registration in the manner and at the time and places as hereinafter provided.
   1–102. Persons born in calendar year 1960 shall present themselves for registration on any of the six days beginning Monday, July 21, 1980.
   . . . .

2. The regulation was first promulgated under the 1940 Act on June 4, 1941. Selective Ser-

later made part of the 1948 Military Selective Service Act. That regulation provided:

> The duty of every person subject to registration to present himself for and submit to registration shall continue at all times, and if for any reason any such person is not registered on the day or one of the days fixed for his registration, he shall immediately present himself for and submit to registration before the local board in the area where he happens to be. 32 CFR 1611.7(c)

However, on September 2, 1972 the "continuing duty regulation" was rescinded and on March 29, 1975 President Ford discontinued the procedures for registration under the Military Selective Service Act. Presidential Proclamation No. 4360, 40 F.R. 14567 (1975). In early 1980, President Carter determined that it was necessary to reactivate the draft registration process, *See, Rostker v. Goldberg,* 453 U.S. 57, 60, 101 S.Ct. 2646, 2649, 69 L.Ed.2d 478 (1980), and on July 2, 1980, he issued Proclamation No. 4771 (FN 1 above) ordering registration of certain young men.

On July 18, 1980, three days before registration was to begin, regulations were published governing the administration of registration. 45 F.R. 48130 (1980), codified in 32 CFR Part 1615. Noticeably absent from said regulations was any "continuing duty" regulation. 32 CFR § 1611.7(c).

In 1970, the United States Supreme Court decided a statute of limitations question arising under 50 U.S.C.App. §§ 453 and 462(a) of the Universal Military Training and Service Act. *Toussie v. United States,* 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). In order to decide at what point the statute of limitations began to run, the court determined that it was necessary to initially ascertain whether or not the offense involved was a continuing one. The court noted that the doctrine of continuing offenses should be applied only in limited circumstances. *Id.* at 115, 90 S.Ct. at 860. Significantly, a particular of-

fense should not be construed as a continuing one, "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115, 90 S.Ct. at 860.

In an effort to ascertain the nature of the crime and the Congressional intent, the court examined the substantive statute, the regulations and the history of the draft laws. The conclusion reached was that "there is nothing inherent in the nature of failing to register that makes it a continuing offense." *Id.* at 122, 90 S.Ct. at 864. "While it is true that the regulation [3] does in explicit terms refer to registration as a continuing duty, we cannot give it the effect of making this criminal offense a continuing one." *Id.* at 121, 90 S.Ct. at 863. The law requires that a man register within a specified period of time and if he does not register within that time, he then and there has committed the offense of failing to register. *Id.* at 119, 90 S.Ct. at 862.

In *United States v. Owens,* 431 F.2d 349 (5th Cir.1970) defendant was required to register within five days of his eighteenth birthday. Defendant failed to register and was indicted. The indictment charged defendant with failing to register on a date approximately fourteen months after the five day registration period had passed. Defendant alleged that the indictment was insufficient because it did not state a crime. The court disagreed, finding that 32 CFR § 1611.7(c) imposed upon defendant the continuing duty to register and that failure to so register was a crime. *United States v. Owens,* 431 F.2d at 351. The court based its decision on the "continuing duty regulation" which it claimed had not been outlawed by *Toussie. Id.* at 351.

Similarly, in cases decided prior to *Toussie,* courts that have concluded that failure to register is a continuing offense have done so by relying explicitly on the regulation. *See, Gara v. United States,* 178 F.2d 38, 39 (6th Cir.1949), aff'd by an equally

vice System Regulations Vol. 2, § IX, 205(d), 6 Fed.Reg. 2747.

**3.** 32 CFR § 1611.7(c), *supra* at 2.

divided court, 340 U.S. 857, 71 S.Ct. 87, 95 L.Ed. 628 (1950); *McGregor v. United States,* 206 F.2d 583, 584 (4th Cir.1953); *Fogel v. United States,* 162 F.2d 54, 55 (5th Cir.1947), *cert. denied,* 332 U.S. 791, 68 S.Ct. 101, 92 L.Ed. 373 (1947). As noted above, 32 CFR § 1611.7(c) was repealed in 1972 and no similar regulation has taken its place. Thus, if a continuing duty to register is to be found it must have its basis elsewhere.

In 1971, in direct response to *Toussie,* Congress enacted Public Law 92–129 (50 U.S.C.App. § 462(d)) providing:

> (d) No person shall be prosecuted, tried, or punished for evading, neglecting, or refusing to perform the duty of registering imposed by section 3 of this title [section 453 of this Appendix] unless the indictment is found within five years next after the last day before such person attains the age of twenty-six, or within five years next after the last day before such person does perform his duty to register, whichever shall first occur.

This section extends the statute of limitations for prosecution of non-registrants from age 23 to age 31. However, the government maintains that it is clear from reading the legislative history of the statute and the subsequent case law that Congress, by enacting 50 U.S.C.App. § 462(d), intended to impose a continuing duty to register. The court cannot agree.

While it is evident that Congress intended to extend the statute of limitations by passing 50 U.S.C.App. § 462(d), it is far from evident that Congress intended to impose a continuing duty to register. The legislative history is brief, vague, incomplete and contains only one reference to a continuing requirement to register.[4] S.R. No. 92–93, 92d Cong. 1st Sess. (1971), in U.S.Code Cong. & Admin.News 1439, 1455–6, 1458 and H.R. No. 92–82, 92d Cong. 1st Sess. 17 (1971). The court is not convinced that Congress "assuredly" intended that the duty to register be treated as a continuing one. *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860. Had it so intended, Congress could have explicitly provided for the continuing duty as it did in 50 U.S.C.App. § 454.[5]

Moreover, the cases cited by the government do not support finding a continued duty. In *United States v. Richardson,* 512 F.2d 105 (3rd Cir.1975), contrary to the government's assertion, the court made no comment regarding the intent of Congress to impose a continuing duty to register by enacting 50 U.S.C.App. § 462(d). In referring to § 462(d) the court simply stated, "[T]he legislative history of the statute indicates that Congress wished to overcome the decision in *Toussie* . . ." *Id.* at 106. Although Congress did overcome the result in *Toussie,* it did so by extending the statute of limitations, not by altering the nature of the offense so as to create a continuing duty to register.

In *United States v. Robinson,* 485 F.2d 1157 (3rd Cir.1973), another case cited by the government, the issue before the court was whether or not there was a continuing duty to report for induction. Although the court expressed its opinion that the enactment of § 462(d) indicated legislative intent to impose a continuing duty to register, it also noted that,

> *Toussie* was concerned only with the statute of limitations as it applied to the *duty to register,* and as to that obligation there is no comparable provision in the statute as does exist with respect to the *duty to report for induction.* (emphasis added) *Id.* at 1163.

---

4. The lone reference to continuing requirement is contained in H.R.Rep. No. 92–82, 92d Cong., 1st Sess. 17 (1971) which provides in part:
   The language added here provides that the Statute of Limitations does not begin to run until the last day before the date on which he attained age 26, whichever occurs first. For a non-registrant this will allow prosecution for five years after his 26th birthday. This change is appropriate not only as a device to emphasize the continuing requirement of registration but also as a reflection of equity to those men who comply with the registration requirements and remain liable until age 26.

5. Section 454 provides, "[A]ny registrant who has failed or refused to report for induction shall continue to remain liable for induction. . . ."

In other words, what the *Robinson* court observed is that unlike § 454, neither § 453 or § 462 contain an explicit provision which provides that there is a continuing duty to register. This is particularly important in light of the fact that the regulations no longer provide for a continuing duty as they did at the time of the *Toussie* decision. *Toussie* requires explicit language in the substantive criminal statute before a continuing duty will be found. *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860. Moreover,

[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication. *United States v. Universal Corp.,* 344 U.S. 218, 221–222, 73 S.Ct. 227, 229–30, 97 L.Ed. 260 (1952).

▮▮▮▮ In construing a criminal statute this court cannot demand that a defendant refer to the legislative history of a statute of limitations to determine whether or not he might violate a substantive criminal law. Fundamental fairness of due process requires that no person be held criminally responsible for conduct he could not reasonably understand to be proscribed. *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), *See also,* 21 Am.Jur.2d *Crim.Law* § 16 *et seq.* (1981), 16A Am. Jur.2d *Const.Law* § 818 (1979).

In the instant case, defendant was born on July 13, 1960. Pursuant to § 1–102 of Presidential Proclamation No. 4771, "Persons born in calendar year 1960 shall present themselves for registration on any of the six days beginning Monday, July 21, 1980." Thus, if defendant has committed any offense, it is that of failing to register on or between July 21, 1980 and July 26, 1980.

In *United States v. Harmon,* 486 F.2d 363 (10th Cir.1973) defendant was required by the pertinent regulations to register with the Selective Service on or within five days after attaining his eighteenth birthday. Defendant became 18 on March 18, 1970 but failed to register on or before March 23, 1970, five days after his birthday. Defendant was subsequently indicted and charged with failure to register between the dates of March 24, 1970 and March 2, 1972. Defendant sought to dismiss the indictment on the grounds that it did not charge him with a crime.

In considering defendant's claim the court interpreted the *Toussie* decision as finding no continuing offense and went on to caution that "a U.S. Attorney should think twice before he alleges the offense as a continuing one." *Id.* at 366. However, the court stopped short of dismissing the indictment, noting that although the time allegations were superfluous, they would not void the indictment as long as the defendant was prosecuted within the limitations period. *Id.* at 366.

A variance between the date alleged in the indictment and the date of the commission of the offense will not be fatal, particularly " . . . where the allegation and proof substantially correspond or where the variance was not of a character which could have misled the defendant at trial." *Id.* at 366; *Washington & Georgetown Railroad v. Hickey,* 166 U.S. 521, 531, 17 S.Ct. 661, 665, 41 L.Ed. 1101 (1897).

In the instant case, defendant has alternatively moved to strike the "continuing" portion of the indictment to clear up any uncertainty as to what he will be expected to prove at trial, pursuant to FRCrP 7(d). Defendant does not claim to be misled or that he would be prejudiced if the court sustained his motion to strike.

▮▮▮ Therefore, the court finds that the law imposes no continuing duty to register beyond the period provided for in Presidential Proclamation No. 4771. The allegations in the indictment alleging a continuing duty to register will be stricken as surplusage. FRCrP 7(d).

## II.

Defendant has filed a "Motion to Dismiss Indictment For Selective Prosecution and

Request For Evidentiary Hearing." Defendant requests that the indictment be dismissed because: (1) he is being prosecuted after being "constructively registered," and (2) he is being prosecuted because he has been a public and vociferous spokesman against the Selective Service System and the draft. The government claims that defendant has failed to meet his burden of proof and is therefore not entitled to an evidentiary hearing or dismissal of the indictment. The court agrees with the government and denies defendant's motion.

In *United States v. Catlett*, 584 F.2d 864 (8th Cir.1978), a defendant who had been convicted of willfully failing to file income tax returns appealed his conviction. Defendant claimed that he had been selectively prosecuted on account of his public and notorious refusal to pay income taxes as part of his protest against the war and tax policies of the government. He was denied a pretrial hearing on this question. The court stated at p. 866:

> To establish the essential elements of a *prima facie* case of selective discrimination, a defendant must first demonstrate that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted. Second, the defendant must demonstrate that the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or his exercise of his first amendment right to free speech. *United States vs. Berrios*, 501 F.2d 1207, 1211 (2nd Cir.1974).

Here, defendant is a known non-registrant who has publicly protested and expressed his dissatisfaction with the registration process. Under the first prong adopted in *Catlett* defendant must demonstrate that others *similarly situated* have not been prosecuted for failing to register.

▪ Although defendant has attached an abundance of exhibits to his memorandum in support of his motion, he has not provided any evidence that the government has failed to take steps to prosecute other known non-registrants, other vocal non-registrants or even non-vocal non-registrants. Without such a showing, defendant's selective prosecution claim will fail. *See United States v. Ness*, 652 F.2d 890, 892 (9th Cir. 1981). *United States v. Wilson*, 639 F.2d 500 (9th Cir.1981).

Defendant has claimed, and the government has not resisted, that there are over 500,000 men who have failed to register for the draft. Due to the sheer numbers alone, it is evident that other non-registrants are not being prosecuted. However, as defendant acknowledges, the government has adopted a "passive enforcement" system. Other non-registrants similarly situated to the defendant are being prosecuted under that system. Thus, defendant has failed to show that he is being unfairly singled out for prosecution. *See Catlett*, 584 F.2d at 866.

Having failed to meet the first prong of the selective prosecution test, the court finds that defendant is not entitled to dismissal of the indictment or to an evidentiary hearing. However, even assuming that defendant has met the first prong, he does not demonstrate that the selection of him for prosecution was based on an impermissible ground, as required under the second prong.

▪ Defendant alleges that he is being prosecuted because he is an outspoken opponent of registration and that this violates his First Amendment rights.

It is apparent that defendant came to the attention of the Selective Service and the Department of Justice because of his protest activities and letters which he sent government officials. However, as the court indicated in *Catlett, supra* that showing is not enough:

> In the instant case, a close examination of defendant's motions and suggestions reveals that he has failed to allege a governmental policy of selective prosecution based on an impermissible ground. The policy he attacks discriminates between nonfiling protestors whose protests

receive publicity and nonfiling protestors whose protests do not receive publicity. Defendant's theory is *not* that he has been singled out for prosecution solely because he has protested the war and tax policies of the government. Rather, he objects to his prosecution only on the basis that he was selected due to the *publicity* his protests have received. The decision to prosecute, therefore, rests upon the amount of publicity one's protests receive, not upon the exercise of one's first amendment right to free speech. Such a decision is not based upon an impermissible ground but rather serves a legitimate governmental interest in promoting public compliance with tax laws. *Id.* at 868.

The government is clearly entitled to select those cases for prosecution which it believes will promote public compliance with the Selective Service registration laws. *See, Catlett,* 584 F.2d at 868.

> While the decision to prosecute an individual cannot be made in retaliation for his exercise of his first amendment right to protest government [registration and draft policies], the prosecution of those protestors who publicly and with attendant publicity assert an alleged personal privilege [not to register] as part of their protest is not selection on an impermissible basis. *Catlett,* 584 F.2d at 867.

If this court were to adopt defendant's view, it would mean that future violators of the law could be able to avoid prosecution by speaking out on a particular issue and thereby drawing attention to themselves. However, the court will not do so particularly where, as here, defendant has not established a *prima facie* case of selective prosecution.

In light of the fact that defendant has refused to acknowledge that he was "constructively registered" (See letter to Major General Turnage, attached to government's "Response and Opposition to Plaintiff's Motions"), his first contention is obviously without merit.

### III.

Defendant asserts by way of his "Motion to Dismiss Indictment Upon Impermissably Promulgated Regulations" that 1) the regulations controlling registration are invalid because sixty days were not allowed for notice and comment prior to the regulations taking effect and 2) Presidential Proclamation 4771 is invalid because thirty days were not allowed for notice and comment prior to its promulgation. In resistance, the government argues that the sixty day notice and comment regulation has no statutory foundation and amounts to nothing more than an unenforceable internal rule of the Selective Service Commission. Moreover, the notice and comment provision of 50 U.S.C.App. § 463(b) does not apply to a Presidential Proclamation issued pursuant to 50 U.S.C.App. § 453(a).

In Executive Order 12044, the President prescribed a sixty day notice and comment period for agency regulations. 43 Fed.Reg. 12661 (1978). Although the order was made inapplicable to "regulations issued with respect to a military . . . function of the United States . . . . *Id.* at 12644 (§ 6(b)(2)), the Selective Service subsequently issued a report which stated that, "In accord with Executive Order 12044, at least sixty days will be allowed for comment on proposed regulations in the future." 43 Fed.Reg. 50981 (1978). The Selective Service then published the *registration regulations,* but only provided for thirty days comment.

It is settled, that in the absence of any congressional authority, executive orders are without the force and effect of law. *Liberty Mutual Ins. Co. v. Friedman,* 639 F.2d 164, 172 (4th Cir.1981); *Independent Meat Packers Association v. Butz,* 526 F.2d 228, 236 (8th Cir.), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1975).

Here, there is no apparent underlying statutory foundation for Executive Order 12044. The executive order does not indicate on its face that it was issued pursuant to a statute, and defendants have not shown that such statutory authority exists. Therefore, the executive order will not be

given the force and effect of law and cannot be enforced by the court. Only the President can enforce such an order. *See, United States v. Wayte,* 549 F.Supp. 1376 (C.D.Cal.1982).

The regulations were published in accordance with the thirty day notice and comment period required by statute. 50 U.S.C. App. § 463(b). Therefore defendant's motion to dismiss the indictment on account of illegally promulgated regulations will be denied.

▆▆▆ Regarding defendant's claim of invalidity of Presidential Proclamation 4771, 50 U.S.C.App. § 453 provides in part that certain men shall register with the Selective Service "... as shall be determined by *proclamation* of the President and by *rules* and *regulations* prescribed hereunder." (emphasis added). However, 50 U.S. C.App. § 463(b) requires thirty days notice and comment for "regulations" but makes no reference to "proclamations." Defendant argues that the distinction is only one of semantics, but the court is not persuaded.

Had Congress intended that presidential proclamations should be subject to the notice and comment provisions, it would have explicitly so provided. Section 463(b) provides in part:

. . . . .

After the publication of any regulation and prior to the date on which such regulation becomes effective, any person shall be given an opportunity to submit his views to the Director on such regulation, but no formal hearing shall be required on any such regulation.

. . . . .

Congress clearly intended by this section that only the Director received public comments on proposed rules and regulations. It would be an unprecedented step to require that the President give notice and receive comments prior to issuance of a presidential proclamation. Nor have counsel cited any authority for such a proposition.

"There is of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Association, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940); *Matter of Covey,* 650 F.2d 877, 880 (7th Cir.1981). Further, "[as] in all cases of statutory construction, our task is to interpret the words of these statutes in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979); *Atchison Topeka and Santa Fe Railroad Co. v. United States,* 617 F.2d 485, 490 (7th Cir.1980).

Selective Service registration began under the draft law of 1917. Ever since that beginning, certain persons have been subject to registration "... upon proclamation by the President ..." 40 Stat. 80. Although Congress has amended the Selective Service statutes from time to time, the President has always retained the authority to decide when and in what manner a particular registration should proceed. It would not be consistent with the history of the Selective Service Act for Congress to now intend that the President's discretion be limited in this regard by procedural provisions contained in the act. The procedural safeguards are necessary only as a check upon the actions taken by an agency in formulating rules and regulations for, unlike Congress and the President, an agency would otherwise be held unaccountable for its actions.

▆▆ Moreover, "[p]residential proclamations and orders have the force and effect of laws when issued pursuant to a statutory mandate or delegation of authority from Congress." *Kuhn v. National Association of Letter Carriers,* 570 F.2d 757, 761 (8th Cir.1978), citing, *Independent Meat Packers Association v. Butz,* 526 F.2d 228, 235 (8th Cir.1975), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1461, 47 L.Ed.2d 733 (1975). Here, 50 U.S. C.App. § 453 gives the President clear authority to determine by proclamation, the time, manner and place of registration. Therefore, the presidential proclamation "... is to be accorded the force and effect given to a statute enacted by Congress."

*Farkas v. Texas Instruments,* 375 F.2d 629, 632 (5th Cir.1967), *cert. denied,* 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 471 (1967). Statutes enacted by Congress are not subjected to notice and comment periods and no reason appears why the same should not be true for presidential proclamations.

> The same rule of presumptions should be applied to proclamations of the President that is applied to statutes; that is, that they had a valid existence on the day of their date, and no inquiry should be permitted upon the subject. Even conceding publication to be necessary, the officer upon whom rests the duty of making it should be conclusively presumed to have promptly and properly discharged that duty.

*Lapeyre v. United States,* 84 U.S. 191, 17 Wall. 191, 21 L.Ed. 606 (1872). 77 Am. Jur.2d, *United States* § 47 (1975).

██ Finally, presidential action taken pursuant to Congressional authorization should be supported by "the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon anyone who might attack it." *Dames & Moore v. Regan,* 453 U.S. 654, 668, 101 S.Ct. 2972, 2981, 69 L.Ed.2d 918 (1980), *citing, Youngstown Sheet & Tube v. Sawyer,* 343 U.S. 579, 637, 72 S.Ct. 863, 871, 96 L.Ed. 1153 (1952).

Applying these standards, this court cannot say that Congress intended no distinction between a presidential proclamation and rules and regulations of a government agency when enacting §§ 454 and 463.

### IV, V, VI.

Defendant's remaining motions to dismiss are without merit.

It is therefore

ORDERED

1. That the word "Beginning" and the phrase "and continuing until on or about August 20, 1982," which appear in lines one and two of the indictment are stricken and the indictment shall now read:

On or about July 27, 1980, within the Northern District of Iowa, RUSSELL JAMES MARTIN, a male person required to present himself for and submit to registration pursuant to the Military Selective Service Act, rules and regulations duly made pursuant thereto and Presidential Proclamation No. 4771 of July 2, 1980, did knowingly and wilfully fail, evade and refuse to present himself for and submit to registration in violation of 50 U.S.C.App. §§ 453 and 462(a).

2. Defendant's remaining motions denied.