COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Elder and
          Senior Judge Overton
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.    Record No. 2360-00-2           JUDGE LARRY G. ELDER
                                        MARCH 6, 2001
ANABELIS CORRALES


        FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
                    John W. Scott, Jr., Judge

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellant.

            John Franklin for appellee.


     Anabelis Corrales (defendant) stands indicted for the

murder of her newborn infant.  The Commonwealth appeals a

pretrial ruling granting defendant's motion to suppress three

statements defendant made to police.  On appeal, the

Commonwealth contends the trial court erroneously suppressed the

evidence because defendant was not in custody when interviewed

by the police in her hospital room on three separate occasions.

It also contends that even if the interviews were custodial,

defendant validly waived her right to have counsel present after

initially invoking that right.  We hold the evidence supported

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

the trial court's finding that the interviews were custodial and that defendant invoked and did not validly waive her right to counsel.  Therefore, we affirm the trial court's suppression of defendant's statements and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

On appeal of a ruling on a motion to suppress, we view the evidence in the light most favorable to the prevailing party, here the defendant, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).  However, we review de novo the trial court's application of defined legal standards to the particular facts of the case.  See Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

A.

CUSTODIAL STATUS

Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), holds that "statements stemming from custodial interrogation are inadmissible unless certain

-

procedural safeguards effective to secure the privilege against self-incrimination are provided.  Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Wass v. Commonwealth, 5 Va. App. 27, 29-30, 359 S.E.2d 836, 837 (1987) (quoting Miranda, 384 U.S. at 444, 86 S. Ct. at 1612).

> The totality of circumstances must be considered in determining whether the suspect is in custody when questioned . . . .  It is only when a suspect's freedom of movement is curtailed to a degree associated with formal arrest that the suspect is entitled to the full protection of Miranda.  In making that determination, the situation must be viewed from the vantage point of "how a reasonable [person] in the suspect's position would have understood his situation."

Id. at 32, 359 S.E.2d at 839 (quoting Berkemer v. McCarty, 468 U.S. 420, 442, 104 S. Ct. 3138, 3151, 82 L. Ed. 2d 317 (1984)).

Appropriate factors for consideration include the nature of the surroundings in which the questioning takes place, "the number of police officers present, the degree of physical restraint, and the duration and character of the interrogation." Id. at 32-33, 359 S.E.2d at 839.  The existence of probable cause to arrest, the focus of the investigation on a particular suspect, and "'"the extent to which he or she is confronted with evidence of guilt"'" are also relevant factors.  Id. at 33, 359 S.E.2d at 839 (quoting United States v. Bautista, 684 F.2d 1286,

-

1292 (9th Cir. 1982) (quoting United States v. Booth, 669 F.2d 1231, 1235 (9th Cir. 1982))). "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant . . . to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.'" Stansbury v. California, 511 U.S. 318, 325, 114 S. Ct. 1526, 1530, 128 L. Ed. 2d 293 (1994) (quoting Berkemer, 468 U.S. at 440, 104 S. Ct. at 3150) (other citations omitted).

The fact that one is hospitalized at the time of an interrogation does not automatically render the interrogation custodial, see Taylor v. Commonwealth, 26 Va. App. 485, 489, 491-92, 495 S.E.2d 522, 524, 525 (1998) (assuming without discussion that interview of hospitalized driver regarding car accident was non-custodial), but it is an appropriate factor for inclusion in the analysis of whether a reasonable person would have believed she was in custody, see State v. Choinacki, 734 A.2d 324, 338-40 (N.J. Super. Ct. App. Div. 1999) (considering factors such as whether police transported suspect to hospital, posted guard outside suspect's room, or otherwise prevented suspect from leaving), cert. denied, 743 A.2d 849 (1999).

Here, the evidence, viewed in the light most favorable to defendant, supports the trial court's ruling that defendant was in custody while being questioned by police. Officer Perkins'

-

interrogation of defendant occurred while the sleepy defendant was receiving medical treatment for a birth which occurred at home and necessitated subsequent inpatient care.  Hospital personnel had earlier denied defendant's boyfriend entry into defendant's hospital room at the request of police.  Although visitors were in defendant's room when Officer Perkins arrived, hospital personnel asked them to leave.  Perkins then closed defendant's hospital room door, and no one but hospital personnel entered while the questioning was taking place.  Although police allowed defendant's sister, Rosa Corrales, to be present during the second interrogation, they did so in an express attempt to establish that it was defendant and not her sister who put the baby in the closet.

Other evidence established that defendant spoke only broken English, and the person who acted as an interpreter for Officer Perkins, Ed Medina, was also a police officer.  The officers spent one hour and twenty minutes interrogating defendant the first time and returned less than two hours later to interrogate her a second time.  Perkins admitted that he had "focused" his investigation on defendant and that she was his "prime suspect." Although the officers did not tell defendant this specifically, Medina told defendant that they "[were] going to" and "[had] to ask [her] some questions about what happened today," and they read defendant her Miranda rights.  Defendant was Mirandized again during the third interrogation.

-

Whether the police have Mirandized a suspect, although not conclusive evidence of one's custodial status, see United States v. Owens, 431 F.2d 349, 352 (5th Cir. 1970), is an appropriate factor to be considered in the totality-of-the-circumstances analysis, see Wass, 5 Va. App. at 32-33, 359 S.E.2d at 839. Under the facts of this case, we hold that defendant's receipt of her Miranda rights would convey to a reasonable person in defendant's position that the police had, in fact, focused their investigation on her, and additional circumstances reinforced this view. After defendant had been Mirandized, Perkins made statements indicating his belief that defendant was responsible for the death of her infant. Perkins said one of the nurses reported defendant's confession to placing the baby in the toilet, and Perkins indicated he thought defendant was lying when she said she did not remember what had occurred. Further, the second interrogation was for the express purpose of "confront[ing] [defendant] about [defendant's] putting the baby in the closet," thereby emphasizing that defendant was their prime suspect in the murder investigation.

Although Perkins and Medina testified that defendant was not in custody and was free to leave or terminate the interviews at any time, the totality of the circumstances supports the trial court's finding that a reasonable person in defendant's position would have believed she was in custody for the murder

-

of her child while confined with the officers in her hospital room.

B.

RIGHT TO COUNSEL

"If, while in custody, a person invokes the right to have counsel present, the police may not resume interrogation until counsel has been made available or until the individual re-initiates communications and waives . . . her right to counsel." Pugliese v. Commonwealth, 16 Va. App. 82, 87, 428 S.E.2d 16, 21 (1993) (citing Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S. Ct. 1880, 1885, 68 L. Ed. 2d 378 (1981)). The interrogation also must cease if a person in custody invokes her right to remain silent. Michigan v. Mosley, 423 U.S. 96, 101, 96 S. Ct. 321, 325, 46 L. Ed. 2d 313 (1975). "Police officers may not resume interrogation of a person in custody who has asserted his right to remain silent unless they have 'scrupulously honored' that right." Pugliese, 16 Va. App. at 87, 428 S.E.2d at 21 (quoting Mosley, 423 U.S. at 102-04, 96 S. Ct. at 325-26).

The test for determining whether a suspect invoked either right is an objective one. Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994) (applying objective test to invocation of right to counsel); Medina v. Singletary, 59 F.3d 1095, 1100-01 (11th Cir. 1995) (applying objective test of Davis to invocation of right to

-

remain silent).  A suspect must articulate her desire to exercise her right to silence or counsel "'with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of [the right at issue].'"  Medina, 59 F.3d at 1101 (quoting Coleman v. Singletary, 30 F.3d 1420, 1424 (11th Cir. 1994)).

Any statement or confession obtained in violation of these principles is presumed to have been the result of an involuntary waiver of one's constitutional rights and, therefore, any evidence obtained as a result is inadmissible.  See Giles v. Commonwealth, 28 Va. App. 527, 530-31, 507 S.E.2d 102, 104 (1998); Pugliese, 16 Va. App. at 87, 428 S.E.2d at 21.  We are bound by the trial court's "subsidiary factual findings" underpinning both these issues unless they are plainly wrong. Pugliese, 16 Va. App. at 87, 88, 428 S.E.2d at 21; see Giles, 28 Va. App. at 532-33, 507 S.E.2d at 105.

Here, the trial court accepted the translation of the interview prepared by certified translator Michelle Kusuda. That transcript revealed the following exchange:

> Medina:  This, do you want an attorney now?
>
> [Defendant]:  Yes.
>
> Medina:  I beg your pardon?
>
> [Defendant]:  Yes.
>
> Medina:  Do you want an attorney?
>
> [Defendant]:  Yes.

-

Medina:  Ok.  Well, you do not want to talk with us now any more then…

[Defendant]:  No

Medina:  That is what I need.

Medina:  Do you want an attorney here now?

[Defendant]:  No.  No, it's alright.

Medina:  Are you sure?  That is not a problem for me.  I want to know that you are sure of everything before you answer.

[Defendant]:  Well, I think it is alright with you.  It is not necessary.

Medina:  It isn't necessary then?

[Defendant]:  No.

Medina:  Ok.

Medina:  We questioned her whether she wanted a lawyer or not.  She changed her mind.  She said she would be willing to talk to us.

Perkins:  So she wants to talk to us?

Medina:  Yeah, that's what she says.

Relying on this passage, the court found that defendant unambiguously requested an attorney three times in succession by answering, "Yes," to Medina's questions regarding her desire for counsel and that she made an unambiguous request to terminate the interview.  Although Officer Medina testified that he had trouble hearing defendant and asked her to repeat herself only because he was not sure whether she was invoking her right to counsel, the trial court rejected this testimony, as it was free

-

to do.  Because the officers did not cease questioning defendant after she unequivocally invoked her rights to silence and counsel, the evidence supports the trial court's exclusion of her subsequent statements.

For these reasons, we affirm the trial court's suppression of appellant's statements and remand to the trial court for further proceedings consistent with this opinion.

<u>Affirmed and remanded.</u>