**UNITED STATES of America, Plaintiff,**

**v.**

**Paul JACOB, Defendant.**

**No. LR–CR–82–119.**

United States District Court,
E.D. Arkansas, W.D.

May 8, 1985.

George Proctor, U.S. Atty. by Ken Stoll, Asst. U.S. Atty., Little Rock, Ark., for plaintiff.

John Wesley Hall, Jr., and Larry D. Vaught, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

The pivotal question before the Court on defendant's motion for evidentiary hearing and to dismiss is whether defendant is entitled to an evidentiary hearing to determine whether he was indicted for failure to register for the draft because of his exercise of First Amendment rights secured to him under the Federal Constitution.

In essence, Jacob asserts that there are thousands of young males who have not registered for the draft, but only those who have publicly expressed disagreement with the draft registration law have been prosecuted and, as such, the Government has abridged his right of free speech and the Court should afford him a hearing on his claim of selective prosecution.

On the other hand, the Government contends that there has been no abridgment of Jacob's First Amendment rights inasmuch as the Government may legally select for prosecution only those protestors who call attention to themselves by publicly acknowledging that they have not registered and do not intend to do so. In short, the Government asserts strongly that Jacob is not entitled to an evidentiary hearing because his defense of selective prosecution does not state a legitimate defense.

The Court holds that Jacob has not made a threshold showing of his entitlement to an evidentiary hearing by alleging sufficient facts in his motion to take the question beyond the frivolous state and raise a reasonable doubt as to the Government's purpose in prosecuting him. Therefore, Jacob's motion is denied.

### I.

In *United States v. Eklund*, 733 F.2d 1287 (8th Cir.1984) the Court of Appeals reemphasized that the following standards are dispositive in determining whether an evidentiary hearing should be granted on a claim of selective prosecution:

"A hearing is necessitated only when the motion alleges sufficient facts to take the question past the frivolous state ... and raises a reasonable doubt as to the prosecutor's purpose.... Without such a showing the criminal prosecution is presumed to have been undertaken in goodfaith and in a nondiscriminatory manner pursuant to a duty to bring violators to justice."

It is universally accepted that the Government, through the Justice Department, possesses "broad discretion" as to whom to prosecute, providing there is probable cause to believe that an offense has been committed and the determination to prosecute is not "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classifications including the exercise of basic and fundamental rights secured under the Federal Constitution." *See, Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, at 1531, 84 L.Ed.2d 547 (1985).

In *Wayte* the Supreme Court observed that the broad discretion afforded the Government in deciding whom to prosecute rest, in part, on such matters as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the Government's overall enforcement plan." While the Supreme Court emphasized that this governmental discretion is not "unfettered and is subject to constitutional constraints," courts are "hesitant to examine the decision whether to prosecute" because, among other things, of the possibility of frustrating the Government's law enforcement policies.

### II.

### RELEVANT FACTS

Defendant, Paul Jacob (Jacob), twenty-five years of age, on January 5, 1981, par-

ticipated in a demonstration protesting draft registration [1] at the downtown Little Rock post office. Jacob stated to news reporters that he had not registered for the draft and did not intend to. Jacob's name was supplied to the Selective Service by someone who had witnessed the demonstration.

On September 24, 1981, an Assistant United States Attorney of the Eastern District of Arkansas sent Jacob the following letter:

We have received information that you have failed to register with the Selective Service as required by the Military Selective Service Act.

Unless you register with the Selective Service within 21 days of the receipt of this letter, criminal prosecution will be considered against you.

Enclosed is a special registration form prepared by the Selective Service and a postage paid envelope for your use.

This communication was sent by registered mail and pursuant to the Government's passive enforcement system—in which prosecution efforts focused upon nonregistrants brought to the attention of the government by the nonregistrants or by others. The letter was returned "unclaimed."

In November, 1981, Federal Bureau of Investigation agents interviewed Jacob's mother at her North Little Rock, Arkansas, home. She advised the agents that she did not know the whereabouts of her son.

On August 16, 1982, the following communication was sent to the parents of Jacob by the United States Attorney's office:

As you are probably aware your son, Paul Jacob, is being investigated for failure to register with the Selective Service. This failure by you son to register appears to be a violation of law for which he could be prosecuted. We have attempted, through the Federal Bureau of Investigation, to contact your son but have been unable to do so. If your son

has an explanation for his failure to register he should contact this office immediately, otherwise we will proceed to present this matter to the Grand Jury for this district. I would appreciate your advising your son of this letter if you have contact with him.

There was no reply to this letter.

On September 21, 1982, Jacob was indicted by the grand jury for the Eastern District of Arkansas on one count of violating the Military Selective Service Act, Title 50 Appendix, United States Code, Sections 453 and 462(a). Jacob was arrested at his North Little Rock, Arkansas, residence on December 6, 1984.

Jacob asserts that since the reinstitution of the draft, his indictment represents the thirteenth person indicted for failure to register for the draft, and since his indictment, only four additional indictments have been issued nationwide, thus, only seventeen indictments have been obtained out of a pool between 500,000 and 2,000,000 nonregistrants.

Jacob also asserts that it is plain from memoranda proffered that Justice Department and Selective Service officials knew that the Government's "passive enforcement policy" is directed solely at vocal nonregistrants who openly object to the law on either religious, moral or political grounds. Further, the Government has had ample time to institute a reasonable alternative system of enforcement.

Finally, Jacob contends that the Supreme Court's decision in *Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), in rejecting the constitutional challenge to the Government's "passive enforcement policy" is not dispositive of his claim here because the defendants in *Wayte* and *Eklund* were self-reporters while he is not; and that the Supreme Court in *Wayte* and the Court of Appeals in *Eklund* erred in finding that the Government was in the process of instituting an

---

1. On July 2, 1980, President Jimmy Carter issued a proclamation requiring male persons residing in the United States between the ages of eighteen and twenty-six to register with the Selective Service.

"active" procedure in identifying nonregistrants in lieu of the "passive enforcement system."

■ First, the Court rejects Jacob's argument that *Wayte* is not dispositive of the assertion that the "passive system" discriminates against vocal nonregistrants. It is plain that the Supreme Court determined that the Government's "passive enforcement system" coupled with the Government's application of its "beg" policy—policy of prosecuting only those nonregistrants, whether vocal or otherwise, who refused to register after disregarding repeated requests to do so—removed most, if not all, of any burden "passive enforcement" placed on free expression. For example, the Supreme Court stated:

The Government did not prosecute those who reported themselves but later registered. Nor did it prosecute those who protested registration but did not report themselves or were not reported by others.... The Government, on the other hand, did prosecute people who reported themselves or were reported by others but who did not publicly protest. These facts demonstrate that the Government treated all reported nonregistrants similarly. It did not subject vocal nonregistrants to any special burden. Indeed, those prosecuted in effect selected themselves for prosecution by refusing to register after being reported and warned by the Government.

At footnote 12, the Supreme Court observed:

The Government's "beg" policy removed most, if not all, of any burden passive enforcement placed on free expression. Because of this policy, nonregistrants could protest registration and still avoid any danger of prosecution. By simply registering after they had reported themselves to the Selective Service, nonregistrants satisfied their obligation and could thereafter continue to protest registration. No matter how strong their protest, registration immunized from the prosecution. Strictly speaking, then, the passive enforcement

system penalized continued violation of Military Selective Service Act, not speech. The only right it burdened was the asserted "right" not to register, a "right" without foundation either in the Constitution or the history of our country.

Relative to Jacob's claim that *Wayte* is inapplicable because he was reported by a third person rather than by himself, the Court deems it sufficient to observe that *Wayte* makes no distinction between nonregistrants who reported themselves and those who were reported by others. Thus, the Court holds that the fact that Jacob was not self-reported has no relevance to the issue here. It is clear Jacob informed the news media during a demonstration that he had not registered and did not intend to do so. This confession was communicated to the Selective Service by a third person which triggered the investigation by the Government pursuant to its "passive enforcement procedure."

■ The Supreme Court in *Wayte* and the Court of Appeals in *Eklund* found that the government was in the process of substituting the "passive enforcement system" with an "active" system. Jacob argues that as of this date, the purported "active" system has not been instituted, thus this failure not only "undercuts the holdings and factual underpinnings of *Wayte* and *Eklund*", but demonstrates the lack of good faith on the part of the Government. The Government argues that an "active" system is presently in effect and has already generated a prosecution of one nonregistrant in the Middle District of Louisiana and therefore Jacob's argument is without merit. Significantly, the Government challenges Jacob's standing to complain about an alleged failure to implement an "active" identification policy since at the time of Jacob's identification as a nonregistrant on January 5, 1981, the Government's "passive enforcement system" was properly in effect and has passed constitutional muster under *Wayte*. The Court is persuaded that the Government's contention has merit and is dispositive of Jacob's argu-

ment. *See, United States v. Payner*, 447 U.S. 727, 731, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980); *Rakas v. Illinois*, 439 U.S. 128, 138, 99 S.Ct. 421, 427, 58 L.Ed.2d 387 (1978).

## III.

 Finally, Jacob filed a pleading on April 15, 1985, entitled "Demand For Discovery And Inspection" which provides, in part:

"PLEASE TAKE NOTICE that defendant Paul Jacob demands of the Government to produce and permit the Defendant to inpect and copy the following which are in the possession, custody, and control of the Government and any of its branches, including but not limited to the Department of Defense, Department of Selective Service, Department of the Army, Federal Bureau of Investigation, Department of Justice, Social Security Administration, or any other branch or sub-division of the United States Government, the existence of which is known, or by the exercise of due diligence may become known to you...."

In this document, Jacob seeks the disclosure of seventy-one categories of evidence ranging from the conduct of electronic surveillance, grand jury materials to rough notes of agents of the Government. The Government argues that all of Jacob's requests for discovery which spring from Jacob's selective prosecution claim should be denied.

Inasmuch as the Court has found that Jacob is not entitled to an evidentiary hearing on his discriminatory prosecution and his motion for a hearing should be dismissed, the Court agrees that all requests for discovery which flow from Jacob's selective prosecution should be denied and the Court, accordingly, so holds. *See, United States v. Catlett*, 584 F.2d 864 (8th Cir.1978); *United States v. Johnson*, 577 F.2d 1304 (5th Cir.1978); *United States v. Berrios*, 501 F.2d 1207 (2nd Cir.1974). The Court notes that the Government has agreed to afford Jacob all discovery which he is entitled to under *Brady v. Maryland*,

373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Rule 16 under Federal Rules of Criminal Procedure.

## IV.

After carefully scrutinizing Jacob's motion and documents proffered in support, the Court is persuaded that Jacob has not demonstrated sufficient facts to raise a reasonable doubt as to the Government's purpose in prosecuting him mandating an evidentiary hearing. Stated another way, Jacob has failed to allege sufficient facts in support of his selective prosecution claim to exceed the "frivolous state."

Accordingly, it is ordered:

1. That Jacob's motion for an evidentiary hearing and to dismiss the indictment is denied in its entirety;

2. That Jacob's request for discovery of evidence flowing from his selective prosecution claim is denied;

3. That this case proceed to trial on Monday, July 15, 1985, at 9:30 a.m. o'clock.