UNITED STATES of America, Appellant,

v.

William D. CAMMISANO et al., Appellees.

No. 76–1559.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1976.

Decided Dec. 8, 1976.

---

Victor D. Stone, Atty., Dept. of Justice, Washington, D. C., for appellant; Bert C. Hurn, U. S. Atty., Kansas City, Mo., on the brief.

James R. Wyrisch, Joel Pelofsky and Patrick Faltico, Kansas City, Mo., for appellees.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

BRIGHT, Circuit Judge.

An eight-count indictment in the Western District of Missouri charged defendants-appellees William D. Cammisano, John Sherman Miles, and Michael W. Cuezze, with violations of the Meat Inspection Act (21 U.S.C. §§ 610, 676), Packers & Stockyards Act (7 U.S.C. § 222 and 15 U.S.C. § 50), and conspiracy (18 U.S.C. § 371). Appellees Cammisano and Cuezze claim that they have been singled out for prosecution because of their Italian ancestry. Appellee Miles claims he is being selectively prosecuted because of his association with Italians. After lengthy pretrial proceedings and two memorandum opinions, *United States v. Cammisano,* 413 F.Supp. 886, 894, 897 (W.D.Mo.1976) (Apps. A and B), Judge John W. Oliver filed a third memorandum dismissing the indictment, *United States v. Cammisano, supra,* 413 F.Supp. 886, on grounds that the prosecution had refused to comply with the district court's order, dated May 10, 1976, requiring the Government to disclose for *in camera* inspection six broad categories of government documents requested in appellees' discovery motion, which appellees contended would support their claims of selective prosecution.[1]

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The discovery motion sought the following:
    1. All general directives of the Department of Agriculture to its employees, especially but not limited to inspectors, concerning procedures for reporting of possible violations of Section 601ff, Title 21, U.S.C. [sic], to the Department of Agriculture and to the Department of Justice.

The Government appeals the dismissal of the indictment. It notes on appeal that it has complied with the production order under paragraphs 1, 2, and 6 of appellees' discovery motion, *Cammisano, supra,* 413 F.Supp. at 888 n. 2, and insists that the appellees' allegations are insufficient to warrant production of the other requested documents because the appellees failed to make a colorable claim of selective prosecution. The Government also claims that the production order was overbroad.

While we essentially agree with the district court's reasoning, because of the overbreadth of the production order, we vacate the dismissal and remand this case to the district court for further proceedings consistent with this opinion.

The district court in the memorandum accompanying its production order relied generally on *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), observing that

[t]he discovery ordered in this case, although consistent with power and jurisdiction conferred by the Rules of Criminal Procedure, rests upon "The fundamental demands of due process of law in the fair administration of criminal jus-

tice", to which Chief Justice Burger made reference in *United States v. Nixon,* 418 U.S. 683, 713, 94 S.Ct. 3090, 3110, 41 L.Ed.2d 1039, 1066 (1974). The validity of an order for *in camera* examination was affirmed in that case.

*United States v. Nixon* made clear that even a presumptively valid claim of Presidential privilege must be considered in light of our historic commitment to the rule of law administered in accordance with an adversary system of criminal justice. That case concluded that:

The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense. [*Id.* at 709, 94 S.Ct. at 3108, 41 L.Ed.2d at 1064]

2. All general directives of the Department of Justice to its employees concerning procedures for handling of reports relating to violation of Section 601ff, Title 21 U.S.C. [sic].

3. All correspondence, inter-department communications, intra-department communications and referral documents relating to the particular violations alleged in this prosecution which were made, retained and/or transmitted within the Department of Agriculture, within the Department of of [sic] Justice and between them, together with all reports attached to such documents, correspondence and communications except as have already been provided defendants with notations as to which items have been so provided.

4. All correspondence, inter-department communications, intra-department communications and referral documents, together with all supporting documents and reports, relating to any violations of Sections [sic] 601ff, Title 21 U.S.C. which occurred in the Western District of Missouri during the period January, 1972, to and through December,

1974, and which were made, retained and/or transmitted within the Department of Agriculture within the Department of Justice and between them, whether such correspondence, communications and documents resulted in prosecution or not.

5. All correspondence, inter-department communications, intra-department communications and referral documents, together with all supporting documents and reports relating to any violations of Sections [sic] 601ff, Title 21 U.S.C., which occurred in the United States for the period January, 1972 to and through December, 1974, and which were made, retained and/or transmitted within the Department of Agriculture, within the Department of Justice and between them, whether such correspondence, communications and documents resulted in prosecution or not.

6. Any list compiled, maintained and/or published by the Department of Justice or any agency under its supervision which lists so-called organized crime figures in the Western District of Missouri.

*United States v. Nixon* applied and reiterated long established principles when it concluded that "the right to the production of all evidence at a criminal trial . . . has constitutional dimensions." [*Id.* at 711, 94 S.Ct. at 3109, 41 L.Ed.2d at 1066], and that "the allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts." [*Id.* at 712, 94 S.Ct. at 3110, 41 L.Ed.2d at 1066] [*United States v. Cammisano, supra,* 413 F.Supp. at 892–93.]

The district court also cited and relied on *United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974). In that case, Berrios contended that he was prosecuted on charges of illegally holding a union office because of his support for Senator McGovern in the 1972 presidential election and because he attempted to unionize a business described in the case as enjoying close ties to President Nixon. Judge Mansfield commented in *Berrios* on the substantive aspects of selective prosecution:

> Some eighty years ago, the Supreme Court observed that the administration of laws "with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances" constitutes a denial of equal protection. *Yick Wo v. Hopkins,* 118 U.S. 356, 373–374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Nothing can corrode respect for a rule of law more than the knowledge that the government looks beyond the law itself to arbitrary considerations, such as race, religion, or control over the defendant's exercise of his constitutional rights, as the basis for determining its applicability. See *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). Selective prosecution then can become a weapon used to discipline political foe and the dissident, see, e. g., *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973); *United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972). The prosecutor's objective is then diverted from the public interest to the punishment of those harboring beliefs with which the administration in power may disagree. This case involves such allegations. [*Berrios, supra,* 501 F.2d at 1209.]

■ But as noted in *Berrios,* mere allegations of selective prosecution do not authorize a defendant to engage in a fishing expedition for government documents. Before a defendant will be allowed to subpoena documentary evidence related to a selective prosecution defense, the party must first show a "colorable basis" for the claim. *Berrios, supra,* 501 F.2d at 1211. *See United States v. Berrigan,* 482 F.2d 171, 177, 181 (3d Cir. 1973). The court of appeals in *Berrios* explained the "colorable basis" standard as follows:

> [W]e would first require some evidence tending to show the existence of the essential elements of the defense *and that the documents in the government's possession would indeed be probative of these elements.* [*Berrios, supra,* 501 F.2d at 1211–12 (emphasis added).]

In seeking reversal in this case, the Government argues that the appellees completely failed to show "colorable basis" for their selective prosecution claim, and that the documents already produced refute the appellees' claims. Accordingly, the Government contends that the district court erred in finding that "the factual circumstances * * * [established] more than sufficient grounds" for production of government documents to be examined *in camera. Cammisano, supra,* 413 F.Supp. at 891.

In the memorandum supporting the order dismissing the indictment, Judge Oliver reviewed the existing record supporting the appellees' selective prosecution claim.

> At the time we entered our May 10, 1976 order for *in camera* production, there were affidavits and some evidence which could be read to tend to support defendant Cammisano's and defendant Cuezze's claims that they were in fact singled out for prosecution because of their Italian ancestry. The evidence thus far adduced in that regard is not by any means conclusive. * * *

The data before the Court at the time the May 10, 1976 production order was entered, however, included more than the raw statistical data * * *. In this case, the Court has, for example, the affidavit of defendant Cuezze filed December 5, 1975, which the government has elected to more or less ignore.

The government has never attempted to deny the portion of defendant Cuezze's affidavit which states that a Special Agent of the FBI had stated to him, "I am going to put you in jail. But you do have an alternative. You can either go to jail or you can go to work for me." The data present in the record at the time of our May 10, 1976 order, in our judgment, warranted further *in camera* evidentiary production. Indeed, *in camera* production of some additional relevant evidence might be sufficient to shift the burden of going forward with proof of non-discrimination on the government. [*Cammisano, supra* at 890–91 (citations and footnote omitted).]

Judge Oliver after examining the data felt justified in further exploring the selective prosecution claim. On this record, we cannot say that the issuance of the further discovery order for *in camera* inspection, exceeded the broad discretionary powers vested in a federal trial judge. *See Berrios, supra,* 501 F.2d at 1212–13. Accordingly, the Government was not free to completely disregard the discovery order issued by Judge Oliver.

■ The Government argues, however, that the discovery motion and corresponding production order were overbroad. An overbroad discovery motion cannot meet the "colorable basis" standard since by definition it is not relevant to or probative of the selective prosecution claim. While we recognize that the Government did not present the overbreadth issue to the district court, we deem it appropriate to address this issue in the interests of justice and in order to speed the orderly disposition of this case. This course of action is particularly appropriate here because the overbreadth of portions of appellees' discovery motion is apparent on its face. Moreover, at oral argument, appellees virtually conceded the overbreadth of their discovery request.

■ The Government, as we have already noted, has apparently responded to paragraphs 1, 2, and 6 of the discovery motion. Paragraph 5 of the discovery motion, reproduced below, required the Government to undertake a burdensome collection and production of documentation of certain activities of the Department of Agriculture throughout the country. Such records are unlikely to throw any light upon alleged "Italian" prosecutions in the area of Kansas City, Missouri.

5. All correspondence, inter-department communications, intra-department communications and referral documents, together with all supporting documents and reports relating to any violations of Sections [sic] 601ff, Title 21 U.S.C., which occurred in the United States for the period January, 1972 to and through December, 1974, and which were made, retained and/or transmitted within the Department of Justice and between them, whether such correspondence, communications and documents resulted in prosecution or not.

Information requested in paragraphs 3 and 4 (*see* note 1 *supra*), however, may relate more directly to selective prosecution and should be produced for the trial court's inspection.

In light of this discussion, we vacate the dismissal in order to give the prosecutor the opportunity to submit to the district court the material requested in paragraphs 3 and 4 of the discovery order.

We remand this case to the district court for further timely proceedings consistent with this opinion.