UNITED STATES of America, Appellee,

v.

Richard Ralston CATLETT, Appellant.

No. 78–1308.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Oct. 12, 1978.

Irving Achtenberg of Achtenberg &
Achtenberg, Kansas City, Mo., argued and
filed briefs for appellant.

Anthony P. Nugent, Asst. U. S. Atty., Kansas City, Mo., argued; Ronald S. Reed, Jr., U. S. Atty. and J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., filed brief for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY and BRIGHT, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

On October 25, 1977, Richard Ralston Catlett was charged in a three-count information, filed by the United States Attorney for the Western District of Missouri, with having willfully and knowingly failed to file his income tax returns for the calendar years 1971, 1972 and 1973 in violation of 26 U.S.C. § 7203. Defendant filed a motion to dismiss the information on the basis that the criminal prosecution against him constituted selective prosecution in violation of the Fifth and Fourteenth Amendments and further violated his first amendment rights of free speech, free exercise of religion and right of petition. He also moved to compel production by the government of certain documents for inspection by the defendant or the court in camera to substantiate his claim. The District Court[1] denied these motions. After waiver of trial by jury, the defendant was found guilty on Count II of failing to file an income tax return for the year 1972.[2]

Defendant Catlett is a 68 year old Quaker who runs a health food store in Columbia, Missouri. He has long been an active and public protestor of certain policies of the U.S. Government, particularly with respect to its engaging in war and expending government funds for military related ac-

tivities. He has travelled to Washington, D.C., to protest the Vietnam War, and in 1967 he organized the Student Action Center in his Columbia home as headquarters for the peace movement there. Catlett and his protests have received widespread publicity and notoriety. One facet of his protests has been his failure to file income tax returns. According to the defendant, he has refused to pay income taxes since the late 1940's. Apparently, Catlett first came to the attention of the Internal Revenue Service prior to the initiation of these criminal charges by reason of his prior failure to pay income taxes for the calendar years 1969 and 1970. The I.R.S. pursued civil remedies against Catlett which ultimately culminated in a takeover of his store by the I.R.S. until he raised over $4300 for payment of back taxes.[3] Catlett once again continued his refusal to file income tax returns. Thereafter, this criminal prosecution was brought charging him with willfully and knowingly failing to file income tax returns for the calendar years 1971, 1972 and 1973.

Defendant Catlett's primary contention on appeal is that the district court erred in denying him discovery and a hearing or in camera inspection of requested government documents in order to substantiate his allegation of selective prosecution. However, a mere allegation of selective prosecution by the defendant does not require the government to disclose the contents of its files. United States v. Cammisano, 546 F.2d 238, 241 (8th Cir. 1976). In addition, defendant must produce

some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements.

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri, Central Division.

2. The sole evidence at trial was a stipulation in which defendant admitted his willful and knowing failure to file an income tax return for the year 1972. By agreement of the parties, Counts I and III were not tried and those counts were dismissed by the government following sentencing of the defendant.

3. Upon payment of the back taxes, defendant read the following statement: "I will not willingly comply at any time providing those taxes that are in support of the war . . . I make the payment in order to protect the interests of others with equity in jeopardy." The Columbia Daily Tribune, April 9, 1974.

*United States v. Berrios,* 501 F.2d 1207, 1211–12 (2d Cir. 1974) quoted in *United States v. Cammisano, id.* A hearing is necessitated only when the motion alleges sufficient facts to take the question past the frivolous state, *United States v. Erne,* 576 F.2d 212 (9th Cir. 1978); *United States v. Oaks,* 508 F.2d 1403, 1404 (9th Cir. 1974), and raises a reasonable doubt as to the prosecutor's purpose. *United States v. Peskin,* 527 F.2d 71, 86 (7th Cir. 1975); *United States v. Falk,* 479 F.2d 616, 620–21 (7th Cir. 1973) (*en banc*). Without such a showing the criminal prosecution is presumed to have been undertaken in good faith and in a nondiscriminatory manner pursuant to a duty to bring violators to justice. *United States v. Falk, supra,* 479 F.2d at 620; *United States v. Ojala,* 544 F.2d 940, 943 (8th Cir. 1976). Mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

■ To establish the essential elements of a *prima facie* case of selective discrimination, a defendant must first demonstrate that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted. Second, the defendant must demonstrate that the government's discriminatory selection of him for prosecution was based upon an impermissible ground, such as race, religion or his exercise of his first amendment right to free speech. *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974). We approved of this two-pronged test of "intentional and purposeful discrimination" in

*United States v. Swanson,* 509 F.2d 1205, 1208–09 (8th Cir. 1975). *See also United States v. Ojala, supra,* 544 F.2d at 943.

■ Defendant contends that he was selected for criminal prosecution based on a governmental policy which penalizes him for the exercise of his first amendment rights. He concedes that the government has the option to pursue civil or criminal remedies against persons who fail to file income tax returns. However, defendant claims that the government has established a policy which makes a clear distinction and an invidious discrimination between two classes of "nonfilers." The first class includes protestors whose alleged failure to file is in conformance with a personal, moral or religious belief but is little publicized. The government allegedly proceeds with civil remedies to recover unpaid taxes from members of this class. The second class includes "those protestors who are alleged to have failed to file because of objections to government policies of spending public funds for war activities *and whose protests and objections have been widely publicized.*"[4] The government allegedly prosecutes members of the second class under the criminal statutes. Defendant Catlett, an admitted protestor of government military expenditure policies whose protests have "received widespread publicity and notoriety", contends that the decision to pursue criminal prosecution against him was the result of this policy.

As evidence of the alleged impermissible governmental purpose, defendant appended to his motion to dismiss a copy of I.R.S. Manual Supplement 95G–50 which is set out in pertinent part in the margin.[5] This doc-

---

**4.** Defendant's Response to Plaintiff's Suggestions in Opposition to Defendant's Motion to Dismiss Because of Selective Prosecution, filed December 6, 1977 [emphasis original]. Defendant does not seek to distinguish between "nonfilers" who are not "protestors" and those who are.

**5.** "We are concerned about the continuing publicity of taxpayers' admitted failures to comply with the Federal tax laws as a means of protest. Our concern is because the publicity of seemingly successful tax violations, regardless of motive, causes erosion of public confidence

in our tax system, with a resultant adverse impact on voluntary compliance.

"Much of the 'tax protest' publicity in recent years has focused on those protesting American military involvement in Southeast Asia. . . .

\* \* \* \* \* \*

"Nationally, the Intelligence Division has taken or is taking action against many violators who achieved self-promoted prominence as tax protestors. We believe the publicity attending these enforcement actions has done much to

ument directs a selective approach as the most effective and efficient means of deterring the widespread use of tax noncompliance as a means of protest. Noting that publicity of seemingly successful tax violations has an adverse impact on voluntary compliance with the tax laws, the document directs I.R.S. agents to place primary emphasis on the identification and investigation of cases

> involving flagrant violations and those involving violations by individuals who have achieved notoriety as tax protestors. Such cases usually provide a vehicle for extensive news coverage which alerts a large segment of the taxpaying public to the consequences of noncompliance.

The document also calls for a quarterly report including a brief narrative summary of tax protest trends and "sensitive case reports" as provided in IRM 9551. Defendant contends that this governmental policy is evidenced by an examination of these and other documents he requested in his motion to produce.[6]

 Assuming that such a governmental policy was applied to the defendant, and further taking as true all of defendant's allegations, we conclude that he has failed to establish a *prima facie* case of purposeful discrimination. While the decision to prosecute an individual cannot be made in retaliation for his exercise of his first amendment right to protest government war and tax policies, the prosecution of those protestors who publicly and with attendant publicity assert an alleged personal privilege not to pay taxes as part of their protest is not selection on an impermissible basis.

In *United States v. Swanson*, 509 F.2d 1205 (8th Cir. 1975), this court upheld a selective program of investigation and prosecution of accountants, attorneys, and other professionals who customarily gave tax advice to others and who should have been knowledgeable about their tax responsibilities. More recently, in *United States v. Ojala*, 544 F.2d 940 (8th Cir. 1976), we upheld the conviction of a former Minnesota state representative for failure to file income tax returns in violation of 26 U.S.C. § 7203. Ojala had publicly announced at a news conference his refusal to file income tax returns because of his opposition to

---

deter others from embarking on similar courses of illegal action.

\* \* \* \* \* \*

"Our objective is to deter the widespread use of tax noncompliance as a means of protest. We believe a selective approach, rather than a large scale national project, is the most effective and efficient way to achieve this objective. Therefore, primary emphasis will be placed on the identification and investigation of cases in which prosecution will result in the maximum contribution to this objective. These cases will normally be those involving flagrant violations and those involving violations by individuals who have achieved notoriety as tax protestors. Such cases usually provide a vehicle for extensive news coverage which alerts a large segment of the taxpaying public to the consequences of noncompliance. The publicity aspects, of course, require a close working relationship with the public information officers.

"It is neither our intention nor desire to suppress dissent or to persecute individuals because they are critical of, or are identified with groups critical of, the tax system or government policies. Our sole purpose is to further the total Service objective of encouraging and achieving the highest possible degree of voluntary compliance with the tax laws by enforcing statutory sanctions. Therefore, the existing criteria for evaluating information items and selecting cases for criminal investigation must be scrupulously observed, with special emphasis on the high impact cases mentioned above."

**6.** The defendant's motion to produce documents sought:

(1) Any and all internal revenue memoranda of the Internal Revenue Service referring to the defendant as a prominent or notorious tax protestor or recommending criminal prosecution of defendant because of his allegedly being a notorious protestor.

(2) Any and all similar internal memoranda of the Justice Department.

(3) All quarterly Regional Narrative Reports of Intelligence operations (IRM 9562) since September 30, 1973, and all "Sensitive Case Reports" as provided in IRM 9551 (as further identified in IRS Manual Supplement 95G–50.

(4) All summaries of successful cases in the tax protest area disseminated by the IRS, as referred to in the above IRS Manual Supplement.

(5) The correspondence from the IRS to the Justice Department recommending criminal prosecution of defendant.

(6) The correspondence from the Justice Department to the District Attorney for the Western District of Missouri directing the filing of criminal charges against defendant.

military activities of the United States in Vietnam. He was promptly investigated, indicted and convicted. Ojala claimed that the decision to prosecute him was made in reprisal for his exercise of his first amendment right to speak out against the war. In reviewing the refusal of the district court to dismiss the indictment for selective prosecution we stated that

> initiating an investigation and prosecution because of such an announcement by a public figure falls well within the degree of prosecutorial discretion which is historically a part of our criminal justice system.

*Id.* at 944. We noted that selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate and prosecute every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media. *Id.* at 945. *See also United States v. Peskin,* 527 F.2d 71, 86 (7th Cir. 1975), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976); *United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir. 1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976); *United States v. Gardiner,* 531 F.2d 953 (9th Cir. 1976).

In the instant case, a close examination of defendant's motions and suggestions reveals that he has failed to allege a governmental policy of selective prosecution based on an impermissible ground. The policy he attacks discriminates between nonfiling protestors whose protests receive publicity and nonfiling protestors whose protests do not receive publicity. Defendant's theory is *not* that he has been singled out for prosecution solely because he has protested the war and tax policies of the government. Rather, he objects to his prosecution only on the basis that he was selected due to the *publicity* his protests have received. The decision to prosecute, therefore, rests upon the amount of publicity one's protests receive, not upon the exercise of one's first amendment right to free speech. Such a

decision is not based upon an impermissible ground but rather serves a legitimate governmental interest in promoting public compliance with the tax laws. The government is entitled to select those cases for prosecution which it believes will achieve this objective. The prosecution of the defendant clearly falls within this range of prosecutorial discretion. Accordingly, we hold that the district court did not err in denying the defendant discovery and a hearing on his selective prosecution claim.

Affirmed.