UNITED STATES of America, Appellee,

v.

Paul JACOB, Appellant.

No. 85–1808.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1985.

Decided Jan. 13, 1986.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Kenneth F. Stoll, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ROSS, McMILLIAN and ARNOLD, Circuit Judges.

McMILLIAN, Circuit Judge.

Paul Jacob appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas upon a jury verdict finding him guilty of failure to register with Selective Service in violation of 50 U.S.C.App. §§ 453, 462(a). The district court sentenced appellant to a term of five years imprisonment, with four and one-half years suspended, and ordered appellant to perform eight hours per week of community service for two years. For reversal appellant argues that the district court erred in (1) denying him an evidentiary hearing and the opportunity to put on proof on the issue of selective prosecution, (2) refusing his proposed instruction on his theory of defense, and (3) refusing his proposed instruction allowing the jury to find that the offense was not complete. For the reasons discussed below, we affirm the judgment of the district court.

In July 1980 Presidential Proclamation No. 4771, 3 C.F.R. 82 (1981), required male citizens and certain male residents born during 1960 to register with the Selective Service System during the week of July 21, 1980. Appellant, who was born on March 6, 1960, was a vocal and visible dissenter from the registration process. Beginning with the registration process in 1980, appellant publicly encouraged young men of registration age not to register. On January 5, 1981, appellant picketed the United States Post Office and Courthouse in Little Rock, Arkansas. Appellant's picketing activity was observed by Joseph C. Beck, then commander of the Selective Service Reserve Forces for the State of Arkansas. The next day Beck read a newspaper article about the protest activity in the *Arkansas Democrat*. The newspaper article attributed to appellant the statement that he had not registered and did not intend to do so. As a "matter of routine," Beck wrote his superior, Col. Robert Kinscherff, who in than contacted the national headquarters of the Selective Service in Washington, D.C.

Appellant went "underground" on July 4, 1981, in order to travel throughout the country to express his view that registration was immoral. He was quoted in *Rolling Stone* to the effect that "it [was] fairly easy to avoid prosecution if you are mobile

1. The Honorable George Howard, Jr., United States District Judge for the Eastern and Western Districts of Arkansas.

and semi-secretive." While underground, appellant always spoke out under his real name but would occasionally work under an assumed name.

On September 24, 1981, the United States Attorney for the Eastern District of Arkansas wrote appellant a "beg" letter advising him to comply with his legal duty to register and thereby avoid indictment. The letter was sent by certified mail with restricted delivery to appellant at his parents' address. The letter was returned by the Postal Service as unclaimed on October 11, 1981. On November 6, 1981, an FBI agent visited appellant's mother in an attempt to locate appellant, but she was unable to furnish any information about appellant's whereabouts.

Approximately nine months later on August 16, 1982, the United States Attorney's office sent appellant's parents a letter advising them to tell their son to contact the U.S. Attorney's office or his case would be presented to the federal grand jury. During this period appellant was still underground and claims not to have had any knowledge of either letter. On September 21, 1982, appellant was indicted and charged with one count of violating §§ 3, 12(a) of the Military Selective Service Act, 50 U.S.C.App. §§ 453, 462(a).

In early November 1983 appellant returned to Little Rock and was married. Appellant lived with his wife and infant daughter in North Little Rock, worked at odd jobs, and filed a joint tax return in 1984. Appellant testified at his initial bond hearing that he had returned to Arkansas with the intention of surrendering to the authorities, but had not done so because he wanted to "get his affairs in order." In December 1984 appellant was arrested. At

the time of arrest appellant denied his identity to the agents and had in his possession a Virginia driver's license with his photograph but in the name of John D. Hendrickson.

Appellant was arraigned on December 7, 1984, and was released on bond. Appellant's trial was postponed pending the Supreme Court's decision in *Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (*Wayte*).[2]

On April 15, 1985, appellant filed a motion for an evidentiary hearing and a motion to dismiss on the issue of selective prosecution. Appellant submitted a memorandum in support and attached more than 70 pages of exhibits. Appellant argued that there had been only 17 indictments nationwide in over three years, although there was a prosecution pool of between 500,000 and 2,000,000 non-registrants; that Justice Department and Selective Service memoranda demonstrated that the government's passive enforcement policy was directed at vocal non-registrants who openly objected to the registration requirement; and that the active enforcement system described by the government in *Wayte* was never implemented. On May 8, 1985, the district court denied appellant's motions for an evidentiary hearing and to dismiss. *United States v. Jacob*, 608 F.Supp. 485 (E.D.Ark.1985).

At trial appellant called Gen. (Ret.) Thomas Turnage, the director of Selective Service, to show that a high registration compliance rate demonstrated public approval of the Selective Service registration process. Appellant also called Ed Clark, who, like appellant, is a member of the American Libertarian Party. Clark testi-

**2.** The Supreme Court granted certiorari in *Wayte v. United States*, —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), because of a split among the circuits on the issue of selective prosecution and the use of the government's passive enforcement policy. *Id.* 105 S.Ct. at 1530 n. 8. In *United States v. Eklund*, 733 F.2d 1287 (8th Cir.) (banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985), this court held that the defendant was not entitled to an evidentiary hearing on his claim of selective

prosecution and upheld a conviction for failure to register. However, the Sixth Circuit in *United States v. Schmucker*, 721 F.2d 1046 (6th Cir. 1983), granted the defendant a hearing on the selective prosecution issue; the Supreme Court subsequently vacated *Schmucker* and remanded the case in light of *Wayte*, —— U.S. ——, 105 S.Ct. 1860, 85 L.Ed.2d 155 (1985). The Sixth Circuit then remanded the case to the district court for further proceedings.

fied about the history of the Libertarian movement and its foreign policy positions. Clark also testified that he knew appellant personally, that appellant sincerely believed in Libertarianism and the law, and that appellant "refused to register in recognition of the higher law that the first amendment required him to resist." Brief for Appellant at 18.

Appellant testified and admitted that he had not registered because he had a firm moral belief that draft registration was contrary to American values and the American ideal of a libertarian and free country. Furthermore, he was aware of Gen. Turnage's statement and he believed that his first amendment right to free speech protected him from being compelled to give approval to government policies.

The jury found appellant guilty. This appeal followed.[3]

**Selective Prosecution**

Appellant first argues that the district court erred in denying his motion for an evidentiary hearing, motion for discovery and motion to dismiss the indictment on the issue of selective prosecution. Appellant argues that he was entitled to an evidentiary hearing and discovery to determine whether he was indicted for failure to register because of his exercise of his first amendment right to free speech. Appellant's selective prosecution claim is essentially an attack upon the government's passive enforcement policy. The government argues that appellant was not entitled to an evidentiary hearing or discovery because his defense of selective prosecution was rejected in *Wayte* and thus does not state a valid defense.

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte,* 105 S.Ct. at 1531, *citing United States v. Goodwin,* 457

U.S. 368, 380 n. 11, 102 S.Ct. 2485, 2492 n. 11, 73 L.Ed.2d 74 (1982).

[H]owever, although prosecutorial discretion is broad, it is not " 'unfettered.' Selectivity in the enforcement of criminal laws ... is subject to constitutional constraints. In particular, the decision to prosecute may not be " 'deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification,' " including the exercise of protected statutory and constitutional rights."

*Wayte,* 105 S.Ct. at 1531 (citations omitted).

To establish the essential elements of a *prima facie* case of selective prosecution, a defendant must first demonstrate that he [or she] has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he [or she] was prosecuted. Second, the defendant must demonstrate that the government's discriminatory selection of him [or her] for prosecution was based upon an impermissible ground, such as race, religion or [the] exercise of [the] first amendment right to free speech.

*United States v. Catlett,* 584 F.2d 864, 866 (8th Cir.1978) (citations omitted). We affirmed this two-part test for selective prosecution in *United States v. Eklund,* 733 F.2d 1287, 1289–91 (8th Cir.1984) (banc) (*Eklund*), *cert. denied,* — U.S. —, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985). *Accord Wayte,* 105 S.Ct. at 1531–32 & n. 10.

■ However, the mere allegation of selective prosecution does not require discovery or an evidentiary hearing. *See United States v. Catlett,* 584 F.2d at 865. The defendant must first make a preliminary or threshold showing of the essential elements of the selective prosecution defense. *Id., citing United States v. Berrios,* 501 F.2d 1207, 1211–12 (2d Cir.1974);

---

**3.** Appellant requested bail pending appeal. This request was denied by the district court because appellant could not show by clear and convincing evidence that there was no risk of flight pending appeal. On July 3, 1985, Circuit Judge Richard S. Arnold held an emergency bail hearing on a provisional basis and denied bail pend-

ing appeal on the grounds that the district court's order was not clearly erroneous on the question of flight. *United States v. Jacob,* 767 F.2d 505 (8th Cir.1985) (Arnold, J.) The bail panel later denied bail pending appeal. The denial of bail pending appeal is not an issue in this appeal.

*see also Eklund,* 733 F.2d at 1290–91. "A hearing is necessitated only when the motion alleges sufficient facts [in support of the selective prosecution claim] to take the question past the frivolous state and raises a reasonable doubt as to the prosecutor's purpose." *United States v. Catlett,* 584 F.2d at 866 (citations omitted); *see Eklund,* 733 F.2d at 1290–91.

■ We hold the district court did not err in denying appellant's motions for discovery, an evidentiary hearing and dismissal of the indictment on the grounds of selective prosecution. Appellant made essentially the same factual showing in support of his claim of selective prosecution as did David Wayte. Brief for Appellant at 28. Even assuming the facts alleged to be true, appellant has no valid selective prosecution defense on the basis of those facts after *Wayte.* In *Wayte* the Supreme Court held that prosecution pursuant to the passive enforcement policy and the "beg" policy did not constitute selective prosecution. 105 S.Ct. at 1532. *Accord Eklund,* 733 F.2d at 1291–95.

■ Appellant argues, however, that his claim of selective prosecution is controlled neither by *Wayte* nor *Eklund* for the following reasons. First, appellant argues that his failure to register was reported by a Selective Service official. We find no significance in the fact that appellant was reported by a third party. The Supreme Court in *Wayte* noted that the passive enforcement policy and the "beg" policy did not differentiate between those non-registrants who reported themselves or who were reported by others. 105 S.Ct. at 1532, 1534.

■ Appellant next argues that he was unaware of the "beg" letters sent to him by the government and was therefore unable to take advantage of the "beg" policy. Appellant did not receive the "beg" letters because he had gone "underground" during the period when the government sent the letters to appellant's only known address. Thus, appellant did not receive the "beg" letters and was unable to take ad-

vantage of the "beg" policy to register and in effect "immunize" himself from prosecution, no matter how vocal or visible his protest, *id.* at 1533 n. 12, solely because of his own evasive actions and not because of any government fault.

■ Appellant next argues that the analysis in both *Wayte* and *Eklund* relied upon the government's assertion that it was in the process of replacing the passive enforcement policy with an active enforcement system. Appellant argues that the government in fact has not yet implemented the active enforcement system and that this failure undermines the analysis in the *Wayte* and *Eklund* decisions and demonstrates a lack of good faith on the part of the government. The government argues that the active enforcement system in fact exists but has resulted in few prosecutions because the government continues to follow its "beg" policy before prosecuting non-registrants. Brief for Appellee at 18–19. Regardless of the current status of the government's promised active enforcement system, appellant cannot attack his prosecution on that basis because he was in fact prosecuted pursuant to the passive enforcement policy, which the Supreme Court held did not constitute selective prosecution in *Wayte.* 105 S.Ct. at 1531–32.

**Proposed Instruction—Theory of Defense**

Appellant next argues that the district court erred in refusing his proposed instruction on his theory of defense. Appellant submitted his proposed instruction to the district court. The district court, however, suggested that another instruction would be more appropriate and proposed an alternative instruction that incorporated the first sentence of appellant's proposed instruction. The government then objected to the alternative instruction and proposed a further revision. The alternative instruction, as revised by the government, was given to the jury.

■ On appeal appellant argues that the government's revision totally changed the meaning of the alternative instruction. The government argues that appellant ac-

cepted the disputed revision and waived any objection. The government relies upon the following exchange between the district court and defense counsel:

> Defense counsel: I would object to that one phrase that [the government] put in, but other than that I find it acceptable.
>
> The Court: You object to what phrase now?
>
> Defense Counsel: The phrase that says that his actual belief that he did not have to register. I think his actual belief goes to the reliance on the first amendment but I'll accept it that way.
>
> The Court: You'll accept it? Okay.
>
> Defense counsel: I'll accept it that way.

Appendix for Appellee at A40. Appellant argues that he did not waive his objection but merely acquiesced in the district court's ruling. On the basis of the exchange set forth above, we believe that appellant accepted the revised alternative instruction and waived any objection.[4]

### Proposed Instruction—Complete Offense

█ Appellant next argues that the district court erred in refusing his proposed instruction which stated in part that "failure to register is a continuing offense, but the offense is not complete until the individual reaches age 26." Appellant at the time of indictment and trial had not attained the age of 26. In *Eklund* this court stated that "the offense [of failing to register] is not complete until the statute of limitations begins to run. Since the times at which the limitations period begins to run are firmly established by section 462(d), we may determine when the offense is complete by identifying the beginning of the running of the limitations period." 733 F.2d at 1298, *citing Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Citing this statement from *Eklund,* appellant argues that

his proposed instruction on when the offense is complete was a correct statement of the law. In addition, appellant argues that failure to register is an offense of omission and therefore whether the offense is complete can be determined only when the duty to register no longer exists.

The government argues that appellant's proposed instruction is not a correct statement of the applicable law. The government argues that 50 U.S.C. App. § 462(d) establishes a continuing duty to register, that the failure to comply with this continuing duty is a continuing offense and that appellant in effect continued to commit the crime each day he did not register. *E.g., Eklund,* 733 F.2d at 1295–1302 (discussing *Toussie* and legislative action following that case).

We agree with the government's argument. The continuing offense doctrine does not make failure to register an "incomplete" offense until the individual reaches the age of 26.

> In the typical case, an offense is complete as soon as every element in the crime occurs, and the statute of limitations begins to run from that date. But in the case of a "continuing offense," the crime is not exhausted for purposes of the statute of limitations as long as the proscribed course of conduct continues.

*Toussie v. United States,* 397 U.S. at 124, 90 S.Ct. at 865 (White, J., dissenting) (citations omitted). Because § 462(d) imposes a continuing duty to register, failure to register is a continuing offense. *Eklund,* 733 F.2d at 1297–98. The crime of failure to register was complete when appellant failed to register in July 1980, and the crime continued each day appellant failed to register in violation of the continuing duty to do so. Thus, contrary to the pro-

---

**4.** On the merits the government argues that the district court did not err in refusing to give the proposed instruction because it was not a correct statement of the law and because the instruction actually given adequately covered substance of appellant's theory of defense. We agree that the instruction given by the district court adequately set forth appellant's theory of defense. Appellant's first amendment beliefs were what eventually convinced him to believe that he did not have to register. If appellant sincerely believed in the reasons he gave for his refusal to register, then it followed that he believed he did not have to register. The instruction actually given reflected this theory.

posed instruction, the offense of failure to register was not "incomplete" until appellant reached the age of 26, even though the statute of limitations will not begin to run until that date.

Accordingly, the judgment of the district court is affirmed.