UNITED STATES of America, Appellee,

v.

**Ronald Richard AANERUD, Paul Vincent Morinville, and Rhonda Rae Morinville, Appellants.**

No. 88–5357.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1989.

Decided Jan. 11, 1990.

Rehearing Denied Feb. 16, 1990.

---

957

Tom D. Tobin, Winner, S.D., for appellants.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, and WOLLMAN, Circuit Judges, and BROWN,* Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Ronald Richard Aanerud, Paul Vincent Morinville, and Rhonda Rae Morinville appeal their convictions for trapping leeches without special permits in violation of 18

* The HONORABLE JOHN R. BROWN, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

U.S.C. § 2 (1982) and 50 C.F.R. § 27.51 (1988). Before the district court,[1] appellants argued that the charges against them should be dismissed because the government's enforcement policy violated their constitutional rights under the equal protection clause of the fifth amendment in two ways: (1) the government's prosecution of them constituted selective enforcement of the laws; and (2) the government allowed Native Americans to take leeches. The court denied their motions to dismiss. Appellants then entered a conditional plea of guilty under Rule 11(a) of the Federal Rules of Criminal Procedure, thereby reserving their rights to appeal the court's denial of their constitutional claims. These appeals followed. For the reasons set out below, we affirm the district court.

On May 29, 1987, Aanerud, his daughter, Rhonda Morinville, and her husband, Paul Morinville, were apprehended by the United States Fish and Wildlife Service (Wildlife Service) while trapping leeches [2] in the Krebsbach and Borgrund Waterfowl Production Areas in Mahnomen County, Minnesota. The trio was subsequently charged with violating 18 U.S.C. § 2 [3] and 50 C.F.R. § 27.51.[4] The trapping occurred on land owned by the federal government and within the confines of the White Earth Indian Reservation. The appellants admittedly staged the event in order to provide a test case to challenge the legality of leech trapping by Native Americans under historic treaty rights.

The White Earth Reservation was created by an 1867 treaty between the United States and the Chippewa Indians. Treaty with the Chippewa Indians, 16 Stat. 719 (March 19, 1867) (Treaty of 1867). It is well-settled that the Treaty of 1867, even though it relates specifically to agricultural pursuits and makes no express reference to hunting and fishing rights, reestablished the Minnesota Chippewa's aboriginal rights of hunting, fishing, and collecting rice, which had been extinguished by the Treaty of February 22, 1855, 10 Stat. 1165 (February 22, 1855). *See White Earth Band of Chippewa Indians v. Alexander,* 518 F.Supp. 527, 534 (D.Minn.1981) ("[t]hese are aboriginal rights relinquished by the Treaty of 1855, but later reacquired by the Treaties of 1864 and 1867"), *aff'd,* 683 F.2d 1129, 1137 (8th Cir.1982) (*White Earth II*) ("[t]he [White Earth] Band's right to hunt, fish and gather wild rice is an attribute of its inherent sovereignty"); *State v. Clark,* 282 N.W.2d 902, 909 (Minn.1979) (members of the White Earth Band had hunting and fishing rights under treaty within the White Earth Reservation); *State v. Forge,* 262 N.W.2d 341, 345 (Minn.1977) (en banc) ("[u]nder these treaties [Treaty of 1855 and Treaty of 1867] the [Leech Lake] Band retained an unextinguished right to hunt and fish [on the Leech Lake Reservation]").

In this case, appellants couch their arguments in terms of differential treatment of non-Indians and Indians. The issue before us, however, involves the distinction between members of the White Earth Band of the Minnesota Chippewa (White Earth Band) and non-members. Non-members include non-Native Americans, as well as Native Americans not affiliated with the

---

**1.** The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

**2.** The controversy in this case centers around the leech trapping. Leeches are normally used as fishing bait, and are commonly trapped and sold to fishermen.

**3.** This statute provides:
§ 2. Principals
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
18 U.S.C. § 2.

**4.** This regulation states:
§ 27.51 **Disturbing, injuring, and damaging plants and animals.**
(a) Disturbing, injuring, spearing, poisoning, destroying, collecting or attempting to disturb, injure, spear, poison, destroy or collect any plant or animal on any national wildlife refuge is prohibited except by special permit unless otherwise permitted under this Subchapter C.
50 C.F.R. § 27.51.

White Earth Band.[5]

## I.

At the time of their apprehension, appellants were properly licensed to commercially trap leeches under Minnesota law.[6] These licenses were conditioned upon complying with local ordinance and zoning laws. Appellants were charged with taking leeches in a Waterfowl Production Area. The Wildlife Service prohibits such trapping, without a special permit, because it is not compatible with waterfowl production goals.[7] This prohibition, however, has one exception: it does not apply to Native Americans in Waterfowl Production Areas located within the confines of appropriate reservations. The United States Attorney, in argument, states that this exception was created by an executive branch decision which was based on the Chippewa's historic treaty rights.

On February 15, 1988, before the district court, the appellants moved for a dismissal of the charges against them. They argued that the Wildlife Service violated the equal protection clause of the fifth amendment by allowing only Indians to trap in the area without a permit. Appellants contended that the Wildlife Service granted Indians special permits to take leeches in the area in question, and that no such permits were issued to non-Indians. Further, they maintained that Indians who were required to have, and were eligible to receive, these special permits were not prosecuted for taking leeches without permits. Because these Indians were not prosecuted for taking leeches without permits, but non-Indians were, appellants argued that they were victims of selective prosecution and also contended that they were deprived of equal protection because the special preference given to Indians on this matter had no support in the law.

The district court accepted the government's argument that Native Americans enjoy certain rights not granted to non-Native Americans. In denying appellants' motions to dismiss, the court held that the right to trap leeches without a special permit arose from the aboriginal rights to hunt and fish established by the Treaty of 1867, which has never been extinguished by Congress. The appellants then entered conditional guilty pleas, reserving the right to appeal, under Rule 11(a) of the Federal Rules of Criminal Procedure, the denial of their motion to dismiss. Appellants were fined and given suspended prison sentences, conditioned on not violating leeching laws for one year.

## II.

The sole issue before this court is whether the Chippewa's treaty rights to hunt, fish, and gather wild rice provide a legitimate basis for distinguishing between trapping leeches by members of the White Earth Band and non-members within the White Earth Reservation.

Appellants contend that these treaty rights do not afford such a legitimate basis. They argue that their equal protection

---

5. In *White Earth II* we stated that "Indians who are not members of the [White Earth] Band are treated as non-Indians with regard to hunting, fishing, and wild rice gathering on the [White Earth] Reservation." 683 F.2d at 1132 n. 3 (citing *Washington v. Confederated Tribes of Colville*, 447 U.S. 134, 161, 100 S.Ct. 2069, 2085, 65 L.Ed.2d 10 (1980)).

6. Aanerud had a Minnow Dealer's License, a Minnow Helper License, and a Minnow Dealer's Vehicle License. For purposes of our review, we assume that Aanerud and his party were properly licensed to trap leeches under Minnesota law.

7. In a letter dated December 22, 1986, cited by both parties in this case, Rollin F. Siegfried, Division Supervisor, United States Fish and Wildlife Service, states that:

> Wetland managers feel that leech trapping is not compatible with waterfowl production goals because it disturbs nesting waterfowl and their broods, reduces populations of invertebrates consumed by waterfowl, and attracts and concentrates predators which are drawn to discarded bait and nontarget catches.

Letter to Mr. Merle DeBoer from Rollin F. Siegfried, Division Supervisor, United States Fish and Wildlife Service, regarding Wildlife Service's policy concerning leech trapping in Waterfowl Production Areas, Appellee's Brief, Addendum II.

rights have been violated by the present Wildlife Service policy in two ways. They argue first that the charges against them should be dismissed because the Wildlife Service's enforcement policy constitutes selective prosecution, and, next, that the Wildlife Service's policy of treating the Band members differently is improper, in that it is not linked to Congress' obligation to Native Americans. These equal protection arguments overlap considerably. Regardless, we will consider appellants' arguments in turn.

## A.

■■■ Appellants first contend that permitting Indians to take leeches without permits, while prosecuting non-Indians, constitutes selective criminal prosecution in violation of the fifth amendment's guarantee of equal protection. Appellants maintain that this selective prosecution serves as an effective defense to the charges filed against them. To establish a selective prosecutive defense the appellants must establish two elements. First, they must show that they were singled out for prosecution while similarly situated individuals have not been prosecuted for similar conduct. *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir.1978). They also must show that the government's discriminatory selection is based on an impermissible ground such as race, religion, or the exercise of constitutional rights. *Id. See United States v. Hintzman*, 806 F.2d 840, 842 (8th Cir.1986); *United States v. Holmes*, 794 F.2d 345, 347 (8th Cir.1986). The district court held that the appellants had failed to establish either of these requisite elements. Based on our review of the record, we agree with the district court.

First, members of the White Earth Band and non-members are simply not similarly situated with regard to their respective rights to trap leeches within the confines of the Reservation. The Treaty of 1867 has been held to have reestablished the aboriginal rights of members of the White Earth Bank to hunt, fish and gather rice within the confines of the White Earth Reservation. *See White Earth II*, 683 F.2d at 1137;

*Forge*, 262 N.W.2d at 345; *Clark*, 282 N.W.2d at 909. Although trapping leeches has only become prevalent in the last fifteen years, the Band's right to trap leeches has been recognized by the Wildlife Service. Letter from John Popowski, Acting Regional Director, United States Department of the Interior, Fish and Wildlife Service, to the Honorable Dave Durenberger, United States Senator, August 26, 1987, Appellants' Brief, Addendum 3. These treaty rights remain indefinitely valid, unless they are specifically abrogated. *United States v. Dion*, 476 U.S. 734, 738, 106 S.Ct. 2216, 2219, 90 L.Ed.2d 767 (1986). And since these rights have not been abrogated by Congress, the first element required for a selective prosecution defense has not been established.

Since there is no discrimination by the government, we need not address the second element. We do note, however, that any differentiation that occurred was not based on an impermissible ground. Clearly, the members of the White Earth Band are treated differently than non-members, but this differentiation is based on geography and rights under the Treaty of 1867, not on race. A Band member caught trapping leeches in a Waterfowl Production Area outside the Reservation, and thus not under the aegis of the Treaty of 1867, would be subject to the same penalties as the appellants in this case. Geography is not generally considered an impermissible ground. *See, e.g., Catlett*, 584 F.2d at 866. Furthermore, under *White Mountain Appache Tribe v. Bracker*, 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980), it is permissible on reservations to treat Native Americans and non-Native Americans differently due to Native Americans' special status under the law. *Id.* at 142, 100 S.Ct. at 2583.

■■ Alternatively, appellants argue that the district court erred in denying discovery and an evidentiary hearing to establish their argument for a selective prosecution defense, citing *United States v. Cammisano*, 546 F.2d 238, 241 (8th Cir.1976). While we held the evidence in *Cammisano* to be sufficient to merit a discovery order,

we also stated that "mere allegations of selective prosecution do not authorize a defendant to engage in a fishing expedition." *Id.* In *United States v. Jacob*, 781 F.2d 643 (8th Cir.1986), we set out in greater detail what must be established to merit further discovery or an evidentiary hearing. "The defendant must first make a preliminary or threshold showing of the essential elements of the selective prosecution defense." *Id.* at 646. *See Catlett*, 584 F.2d at 866 ("A hearing is necessitated only when the motion alleges sufficient facts to take the question past the frivolous state, and raises a reasonable doubt as to the prosecutor's purpose" (citations omitted)). In this case, appellants failed to make a threshold showing of either of the elements necessary for a selective prosecution defense. Therefore, the district court did not err in its failure to grant an evidentiary hearing or discovery.

Appellants also argue that the district court erred by failing to address their argument that the Chippewa were required to have permits under Wildlife Service rules, but were not prosecuted for failing to meet this requirement. Appellants contend that, even if the White Earth Band has a treaty right to take leeches, they are still required to secure permits. To support their position appellants cite two documents stating that Native Americans are supplied permits under historic treaty rights. One document is a letter from Rollin F. Siegfried discussing the Wildlife Services exception to the Chippewa relating specifically to the Detroit Lakes area. The second document is the amendment to the Master Plan for the Tarmarac National Wildlife Refuge concerning the White Earth Band's rights on that refuge. It is sufficient to observe that the Detroit Lakes area is not within the White Earth Reservation and that the appellants were not trapping leeches on the Tamarac Reservation. Further, we note that the argument that the Chippewa were required to have permits under Wildlife Service rules, which may run contrary to their treaty rights, can give no comfort to appellants.

### B.

Appellants' second argument is also based on the guarantee of equal protection under the laws provided by the fifth amendment. They argue that the Wildlife Service enforcement policy violates the equal protection clause because the different treatment given Native Americans cannot be tied to "the fulfillment of Congress' unique obligation toward the Indians." *Morton v. Mancari*, 417 U.S. 535, 555, 94 S.Ct. 2474, 2485, 41 L.Ed.2d 290 (1974). The district court did not specifically address this argument in its opinion because of its close ties to the selective prosecution argument.

In *Mancari* the Supreme Court recognized that:

> Literally every piece of legislation dealing with Indian tribes and reservations, and certainly all legislation dealing with the BIA, single out for special treatment a constituency of tribal Indians living on or near reservations. If these laws, derived from historical relationships and explicitly designed to help only Indians, were deemed invidious racial discrimination, an entire Title of the United States Code (25 U.S.C.) would be effectively erased and the solemn commitment of the Government toward the Indians would be jeopardized.

*Id.* at 552, 94 S.Ct. at 2483. *See Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 480, 96 S.Ct. 1634, 1644, 48 L.Ed.2d 96 (1976). Accordingly, "[i]t is in this historical and legal context that the constitutional validity of the Indian preference is to be determined." *Mancari*, 417 U.S. at 553, 94 S.Ct. at 2484.

As stated previously, it is well established that the White Earth Band has aboriginal rights to hunt, fish, and gather wild rice on the White Earth Reservation. *See White Earth II*, 683 F.2d at 1137; *Forge*, 262 N.W.2d at 345; *Clark*, 282 N.W.2d at 909. Furthermore, despite the fact that trapping leeches is a rather recent development on the reservation, we are satisfied that it fits firmly within the ambit of the Band's aboriginal rights, a position supported by the Wildlife Service. Therefore,

we are satisfied that since the Band's right to take leeches is sufficiently tied to "the fulfillment of Congress' unique obligation toward the Indians," the Wildlife Service's enforcement policy does not run awry of the equal protection clause. *Mancari*, 417 U.S. at 555, 94 S.Ct. at 2485.

Finally, we note that, even in the absence of treaty rights, the Supreme Court has upheld singling out Native Americans for special treatment. *See Mancari*, 417 U.S. at 547–48, 94 S.Ct. at 2481–82; *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 165, 93 S.Ct. 1257, 1258, 36 L.Ed.2d 129 (1973). This special treatment for Native Americans, which we have also discussed above in the context of the selective prosecution arguments, fully answers the equal protection arguments asserted by appellants.

Therefore, appellants' second argument also fails. We further observe that a prosecution of criminal charges, even in an event that is staged, is less than a satisfactory vehicle for raising equal protection claims. We say no more, leaving to counsel the task of developing a more desirable method for asserting these claims.

### III.

For the above mentioned reasons, we affirm the district court's denial of appellants' motions to dismiss.

JOHN R. BROWN, Circuit Judge, concurring.

I concur fully in Judge Gibson's opinion for us. Without disagreeing with the opinion statement that "prosecution of criminal charges ... is less than a ... vehicle for raising equal protection claims thus leaving to counsel [to develop] a method for asserting these claims", I would add these brief comments.

On the challenge of selective prosecution, certain factors bear emphasis. First, the prosecution was not out of the blue. Indeed, it was purposefully sought for the now jurisprudentially established legitimate objective of frank civil disobedience as a means of challenging the constitutionality of a given statute, rule, regulation, or practice.

When one seeks the very prosecution which materializes it would be incongruous to hold that the government, responding in effect to such importunities, has committed some kind of constitutional violation in serving up the mechanism so deliberately sought.