# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2575

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Wayne Eagleboy, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  November 16, 1999
Filed:   December 29, 1999

_____

Before WOLLMAN, Chief Judge, LAY, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

The District Court granted Wayne Eagleboy's motion to dismiss Count III of a three-count indictment.  Count III charges Eagleboy with possessing hawk parts in violation of the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. § 703 (1994).  The United States appeals.  This Court has jurisdiction over appeals from the dismissal of an indictment, or any counts of an indictment, pursuant to 18 U.S.C. § 3731 (1994).  Our review is de novo.  United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997).

Eagleboy is not a member of a federally-recognized Indian tribe.  If he were, he would not have been charged with a violation of the MBTA, inasmuch as the United

States has adopted a policy under which members of federally-recognized Indian tribes may possess migratory bird parts, while non-members may not and may be prosecuted for such possession. Pointing to this policy, Eagleboy moved to dismiss Count III on the ground of selective prosecution based on race. The District Court granted the motion, concluding that the policy of not enforcing the MBTA against members of federally-recognized Indian tribes is unconstitutional because it was not established by statute or regulation.

For reversal, the United States argues that the policy in question rests on the non-racial basis of tribal membership and that the adoption of the policy informally rather than by statute or regulation is irrelevant to the policy's constitutionality. In its arguments, the United States contends that the non-enforcement policy was adopted to carry out the special obligations of trust incumbent on the United States in its relations with federally-recognized Indian tribes; and that the policy was neither motivated by a racially invidious purpose nor does it have a racially discriminatory effect. We agree with the United States on all of these points.

The United States is correct that the non-enforcement policy distinguishes between persons on the basis of membership in a federally-recognized Indian tribe, not on the basis of race. The policy exempts from enforcement of the MBTA's prohibition on possession of migratory bird parts only tribal members.[1] Consequently, persons of Indian descent who are not members of a recognized tribe are not covered by the policy even though the policy covers all persons who are in fact enrolled members of a recognized tribe. To repeat, the criterion is tribal membership, not race. Moreover,

_____

[1]The policy was promulgated by the Secretary of the Interior in 1975 and speaks of not enforcing the MBTA against "Indians." The Department of the Interior has defined "Indian" under the policy as including only a member of a federally-recognized tribe.

special programs and exemptions for members of Indian tribes have long been upheld because of the federal government's special obligations toward Indians.[2]

This case is quite similar to, and we believe is governed by, United States v. Aanerud, 893 F.2d 956 (8th Cir.), cert. denied, 498 U.S. 822 (1990), in which we upheld the conviction of non-Indian defendants for trapping leeches in a wildlife refuge, even though the Fish and Wildlife Service had adopted an informal policy of not prosecuting members of the White Earth Band of the Minnesota Chippewa for engaging in identical behavior. Against that background, the Court rejected the defendants' assertion of selective prosecution on the basis of race, finding that treaties with the Chippewas guaranteed their right to trap on the land in question. Moreover, the Court noted that "even in the absence of treaty right, the Supreme Court has upheld singling out Native Americans for special treatment. See Morton v. Mancari, 417 U.S. 535, 551 (1974) . . . . This special treatment for Native Americans . . . fully answers the equal protection arguments asserted by appellants." Aanerud 893 F.2d at 962. Aanerud remains good law in this Circuit and is, we believe, dispositive here.

As we see the case, it has a simple answer. Eagleboy has not shown that he has been singled out for prosecution because of his race. Rather, like all other persons who are not members of a recognized Indian tribe, he is subject to prosecution because, not being a member of a federally-recognized tribe, he cannot benefit from the policy of non-enforcement with respect to such tribal members. It matters not to his eligibility for prosecution whether Eagleboy is white, black, yellow, brown, or any other hue; all that matters is that he is not a member of a federally-recognized tribe. Nor has he

---

[2]Programs for members of Indian tribes have never been understood to be based on race. Indian tribes and their members occupy "a unique legal status," Morton v. Mancari, 417 U.S. 535, 551 (1974), because of Congress's broad constitutional authority over Indian affairs, the long history of federal-Indian treaties, and the assumption by the federal government of a "distinctive obligation of trust" with respect to Indians. Seminole Nation v. United States, 316 U.S. 286, 296 (1942).

offered any evidence to show that his prosecution is in any way in fact the product of bias against persons of his race, whatever his race may be. (We note that the opening page of his appellee's brief characterizes Eagleboy as "a Native American artist of Onondaga tribal heritage who is not an enrolled member of the tribe.") In short, his arguments do not support his claim that he was selected for prosecution because of his race. Moreover, even were we to say that the policy is unconstitutional, this would only mean that the United States is not bound by the policy and is free to prosecute tribal members under the MBTA. It would not mean that the United States cannot prosecute Eagleboy for the violation of the MBTA charged in Count III.

Because Eagleboy has not shown that he has been singled out for prosecution under the MBTA on account of his race, but only has shown that members of federally-recognized Indian tribes are not prosecuted in similar circumstances, we are not inclined to think it is necessary to decide whether the informal federal policy of non-prosecution of tribal members is somehow invalid by reason of its informal status. As we already have suggested, Eagleboy is subject to prosecution under the MBTA whether or not someone else who has possessed migratory bird parts escapes such prosecution; what he has claimed, and what he must show, and precisely what he has not shown, is that he is being selectively prosecuted on account of his race. Nevertheless, the parties have earnestly and at some length argued about the effect, if any, of the policy's informal status, and the ruling of the District Court appears to have turned on this point, so out of an abundance of caution we will address it.

We agree with the government's argument that the exemption for tribal members does not amount to race discrimination simply because it was adopted as an informal policy rather than by statute, treaty, or regulation. Regardless of the method by which the policy was established, it serves to fulfill the government's trust obligations to Indians. As the Supreme Court stated in United States v. Antelope, 430 U.S. 641, 646 (1977), "[f]ederal regulation of Indian tribes . . . is governance of once-sovereign political communities; it is not to be viewed as legislation of a '"racial" group consisting

of "Indians" . . . .'" <u>Id.</u> (quoting <u>Morton</u>, 417 U.S. at 553 n.24). Consequently, the provision of special programs for Indians "has repeatedly been upheld by this Court against claims of unlawful racial discrimination." <u>Id.</u> at 645. <u>See, e.g.</u>, <u>Morton</u>, 417 U.S. 535. Our own decision in <u>Aanerud</u>, 893 F.2d 956, illustrates that the United States does not engage in race discrimination in fulfilling its trust obligations to Indians, whether it acts through legislation, regulation, or informal policy. Though Eagleboy asserts that <u>Aanerud</u> is inapposite because the informal federal policy at issue in that case was based on a treaty with the Chippewa, we disagree, for we said in <u>Aanerud</u> that the policy would not violate equal protection "even in the absence of treaty rights." <u>Id.</u> at 962. <u>Aanerud</u> then concluded that the longstanding principle that special treatment for Indians based on our government's historic trust obligations is not race discrimination "fully answers the equal protection arguments asserted by appellants." <u>Id.</u> We believe that the same principle applies equally to the informal exemption from the MBTA at issue here and fully answers the constitutional argument asserted by Eagleboy.

Finally, Eagleboy argues that certain documents included in the appendix filed by the United States are not properly before this Court. We find that this argument lacks merit. It appears that those documents, which are publicly-available policy statements of the Department of the Interior, were in fact submitted to and accepted by the District Court. But even if the documents were not before the District Court, they do not present new evidence on a disputed question of fact. Instead, they are administrative policy statements that help to flesh out the policy on which the government relies. Thus, they are akin to judicial opinions, treatises, law review articles, public records, and the like that may be cited for the first time on appeal in support of a legal theory that was raised in the trial court. <u>Cf.</u> <u>Nieman v. NLO, Inc.</u>, 108 F.3d 1546, 1554 (6th Cir. 1997) (court may take judicial notice of public records); <u>Lovelace v. Software Spectrum, Inc.</u>, 78 F.3d 1015, 1018 (5th Cir. 1996) (court may take judicial notice of agency documents). Eagleboy does not contend that the United States has raised in this appeal a legal theory that was not raised in the District Court.

For these reasons, we reject his argument that we should not consider the documents in question.

Having considered the record and all of the parties' arguments, we conclude that Eagleboy's claim that he was selectively prosecuted on account of his race lacks support either in law or in fact. The order of the District Court granting Eagleboy's motion to dismiss Count III of the indictment is reversed and the case is remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.